[No. C000150. Third Dist. Jan. 28, 1992.]

JACK SHOEMAKER, Plaintiff and Appellant, v.
BEVERLEE A. MYERS, as Director, etc., et al., Defendants and
Respondents.

1408

**COUNSEL**

Christopher D. Burdick, Gary M. Messing, Cathleen A. Williams, Rockne A. Lucia, Carroll, Burdick & McDonough and John True for Plaintiff and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Robert Mukai, Chief Assistant Attorney General, Charlton B. Holland III, Assistant Attorney General, Dennis Eckhart, Elisabeth C. Brandt, Eileen Gray and Joseph O. Egan, Deputy Attorneys General, for Defendants and Respondents.

McCutchen, Doyle, Brown & Enersen, Jonathan H. Sakol and Emily G. Caplan as Amici Curiae for Defendants and Respondents.

**OPINION**

**PUGLIA, P. J.**—This appeal is before us for the second time, this time on remand from the Supreme Court. (Cal. Rules of Court, rule 29.4.) The matter originally came to us on appeal from a judgment of dismissal following the

sustaining of demurrers to plaintiff's complaint. In our first opinion (*Shoemaker* v. *Myers* (Cal.App.) (*Shoemaker I*)) we concluded all but one of plaintiff's theories of recovery alleged in his complaint for wrongful termination as an investigator for the Department of Health Services (Department) were preempted by the exclusivity provisions of the workers' compensation law (Lab. Code, § 3601). These included theories based on Government Code section 19683 (the whistle-blower statute) and *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314] (*Tameny*). The only theory to survive was that based on an alleged violation of plaintiff's federal civil rights. The Supreme Court granted plaintiff's petition for review and reversed in part, holding plaintiff's claim for violation of the whistle-blower statute is not preempted by the exclusivity provisions of the workers' compensation law. (*Shoemaker* v. *Myers* (1990) 52 Cal.3d 1 [276 Cal.Rptr. 303, 801 P.2d 1054] (*Shoemaker II*).) The court left unresolved other issues raised by the appeal including whether a *Tameny* claim is preempted by workers' compensation law and whether plaintiff's complaint stated such a claim. (*Shoemaker II*, at p. 23.)

Pursuant to the Supreme Court's remand, we shall deal in this opinion with those matters not addressed in *Shoemaker I* and *Shoemaker II*. We shall conclude defendants are not entitled to immunity with respect to plaintiff's claim for violation of the whistle-blower statute. We shall also conclude a theory of recovery for wrongful termination in violation of public policy (*Tameny*) is not preempted by workers' compensation law. Although we shall conclude plaintiff has stated a *Tameny* claim based on allegations of wrongful discharge in retaliation for activity protected by the whistle-blower statute and exercise of rights afforded by the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.; hereafter the Officers Rights Act), we shall further conclude that as to plaintiff's *Tameny* claim, defendants are entitled to immunity under Government Code sections 815.2 and 821.6. Finally, we shall determine that plaintiff complied with the Tort Claims Act. (Gov. Code, § 810 et seq.) Accordingly, we shall reverse in part and affirm in part.

I

The facts as disclosed by plaintiff's pleadings are taken primarily from the opinion of the Supreme Court in *Shoemaker II*: "Plaintiff Jack Shoemaker (plaintiff) had been an investigator for the Department of Health Services (Department) for nine years, and had an exemplary record in civil service for twenty-two years up to the time of his termination.

"In 1979, a letter to the Attorney General from the Office of the Lieutenant Governor asserted that certain family planning health care centers (health centers) were operating illegally because lay workers were performing services required to be performed by licensed medical professionals. The health centers were receiving funds from the Office of Family Planning (OFP) division of the Department. In 1980, plaintiff was assigned to investigate the allegations of illegal operations, and plaintiff ultimately filed a report concluding not only that the health centers had indeed utilized unlicensed personnel to perform medical functions, but that Beverlee A. Myers, director of the Department, and other high Department officials improperly approved funding for the health centers with knowledge that the health centers were engaging in such illegal practices. After plaintiff made his report outlining possible illegal practices by Department officials, his supervisors in the Division of Audits and Investigations, particularly Charles Shuttleworth, who was chief of the division, improperly interfered with plaintiff's investigation by forbidding him to make contacts in furtherance of the investigation or to report his findings or share with appropriate law enforcement agencies the information he had uncovered. In December 1980, plaintiff complained of the interference and asked to be relieved of his assignment to the health centers investigation. Because of his complaint plaintiff received a disciplinary counseling. His supervisors further threatened, intimidated and harassed him on account of his complaints between December 1980 and May 1981.

"In May 1981, a magazine article about the health centers appeared, criticizing the health centers' use of lay health workers and calling into question Beverlee Myers's role in continuing funding for the health centers. After the article appeared, Shuttleworth interrogated plaintiff and other investigators, and threatened to fire any investigator who had 'leaked' information to the press unless he or she 'confessed.'

"The events immediately precipitating plaintiff's termination began in November 1981, when a psychiatrist complained to the Department that Department investigators, in the course of another investigation unrelated to the health centers matter, had harassed two of the psychiatrist's patients. Although plaintiff was not in fact involved in that investigation, the psychiatrist mistakenly identified plaintiff as one of the investigators. Plaintiff's supervisors thereafter orally interrogated him at least two times, on or about December 4 and December 16, 1981, about the misconduct charges. Shuttleworth then demanded that plaintiff provide written answers and explanations to the same questions he had already answered orally. Plaintiff, by a letter memorandum dated December 21, 1981, stated he would not answer further questions on the matter without legal representation in accordance

with the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.). Upon plaintiff's assertion of his right to representation, he was fired for insubordination by Shuttleworth and, on an intradepartmental appeal, senior Department officials upheld the termination, which became effective January 11, 1982.

"Plaintiff filed an administrative appeal to the State Personnel Board. On January 26, 1982, the State Personnel Board ordered plaintiff reinstated. After plaintiff won reinstatement, Shuttleworth and other senior officers made statements to the effect that, even though they knew the termination was not proper, they wanted to cause plaintiff as much trouble as possible, or to the effect that, if it had been anyone other than plaintiff, he would not have been fired." (*Shoemaker II, supra,* 52 Cal.3d at pp. 7-9.)

Plaintiff filed this action against defendants Beverlee A. Myers, director of the Department, Barry Dorfman, assistant director of the Department, Richard H. Koppes, an attorney for the Department, Ted Scott, of the Office of the Executive Secretary of the Department, Philip G. Weiler, chief deputy director of Preventive Health Services in the Department, Jack Reagan, deputy director of the Audits and Investigations Division of the Department, Charles Shuttleworth, chief of the Audits and Investigations Division of the Department, the Department, and the State of California (hereafter collectively defendants) alleging his termination had been in retaliation for the health centers investigation and report. Plaintiff also alleged the pretextual reason given by the Department for his termination, "insubordination" for invoking his right to representation under the Officers Rights Act, was itself improper. (*Shoemaker II, supra,* 52 Cal.3d at p. 9.)

Plaintiff's first amended complaint set forth 11 counts: (1) "wrongful termination," (2) violation of Government Code section 19683, (3) wrongful termination in violation of public policy, (4) breach of contract and the implied covenant of good faith and fair dealing, (5) wrongful interference with a business relationship and wrongful inducement of breach of contract, (6) intentional infliction of emotional distress, (7) fraud and deceit, (8) violation of civil rights (42 U.S.C. § 1983), (9) injunctive relief, and a claim for attorney fees (10) for plaintiff and (11) on behalf of the Peace Officers Research Association of California (PORAC) legal defense fund. The first amended complaint alleged physical injury and disability resulting from defendants' acts. (*Shoemaker II, supra,* 52 Cal.3d at p. 9.)

Defendants demurred and the trial court sustained demurrers to the first, second, third and sixth counts of the first amended complaint based on workers' compensation exclusivity. Demurrers to the seventh count were

sustained on the basis of governmental immunity and failure to set forth sufficient facts. Demurrers to the eighth count were sustained for failure to allege deprivation of a constitutionally protected right, to the ninth count for failure to allege sufficient facts to warrant injunctive relief, and to the eleventh count for lack of standing. Plaintiff was granted leave to amend. (*Shoemaker II, supra,* 52 Cal.3d at pp. 9-10.)

The second amended complaint contained the same 11 counts, but essentially omitted reference to physical injury, except as to the claim for violation of civil rights. The trial court again sustained demurrers with leave to amend based on workers' compensation exclusivity. However, demurrers as to the civil rights, injunction, and attorney fees claims were sustained without leave to amend. (*Shoemaker II, supra,* 52 Cal.3d at p. 10.)

Plaintiff's third amended complaint realleged claims for (1) "wrongful termination," (2) violation of Government Code section 19683, (3) wrongful discharge in violation of public policy, (4) breach of contract and the implied covenant of good faith and fair dealing, (5) interference with business relationship and inducement of breach of contract, and (6) intentional infliction of emotional distress. Defendants again demurred. This time the trial court sustained the demurrers without leave to amend, concluding plaintiff failed to explain the omission in the second and third amended complaints of physical injury allegations which had appeared in the verified first amended complaint and therefore the claims were barred by the exclusivity provisions of the workers' compensation law. Judgment of dismissal was entered. (*Shoemaker II, supra,* 52 Cal.3d at pp. 10-11.)

On appeal to this court, we agreed all counts of the third amended complaint were preempted by the workers' compensation law. However, we concluded the eighth count of the second amended complaint stated a federal civil rights claim against the individual defendants. We therefore directed the trial court to overrule the demurrers to the second amended complaint as to the civil rights claim and the ancillary claim for attorney fees. (*Shoemaker I.*)

As previously indicated, the Supreme Court reversed in part, holding the Government Code section 19683 claim is not preempted by the workers' compensation law. The Supreme Court remanded the case to this court "for further proceedings consistent with [its] opinion, including consideration of those issues not previously determined." (*Shoemaker II, supra,* 52 Cal.3d at p. 27.)

## II

"A determination whether a cause of action is barred by the exclusive remedy provisions of the workers' compensation law must take into

account not only the facts alleged (i.e., of physical injury) but also their relation to the scope and purposes of the workers' compensation statutory scheme." (*Shoemaker II, supra,* 52 Cal.3d at p. 13.)

In *Shoemaker II,* the court discussed at length the applicability of workers' compensation to intentional employer conduct (i.e., termination). Relying on its earlier decision in *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 [233 Cal.Rptr. 308, 729 P.2d 743] (hereafter *Cole*), the court noted: "the legal theory supporting [the] exclusive remedy provisions is a presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort. [Citations.] The function of the exclusive remedy provisions is to give efficacy to the theoretical 'compensation bargain.' " (*Shoemaker II, supra,* 52 Cal.3d at p. 16.)

In *Cole,* the court recognized three general categories of circumstances in which an employer's intentional conduct falls outside the compensation bargain: "conduct of an employer having a 'questionable' relationship to the employment, an injury which did not occur while the employee was performing service incidental to the employment and which would not be viewed as a risk of the employment, or conduct where the employer or insurer stepped out of their proper roles. [Citations.]" (*Cole, supra,* 43 Cal.3d at p. 161.) In *Shoemaker II,* the court concluded a cause of action based on violation of the whistle-blower statute falls outside the compensation bargain because of the greater specificity of the whistle-blower statute and because to hold otherwise would render that statute superfluous. (*Shoemaker II, supra,* 52 Cal.3d at p. 22.) As stated by the court: "the Legislature's enactment of specific statutory protection for whistle blowing activity, including a civil action for damages incurred from official retaliatory acts, defines the protected activity as a specific statutory exception to the provisions of the workers' compensation law; such conduct lies well outside the compensation bargain." (*Shoemaker II* at p. 23, italics deleted.)

### III

The tort of wrongful discharge in violation of public policy, first recognized in *Tameny,* was further refined by the court in *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373] (hereafter *Foley*) and *Rojo v. Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373]. In *Foley,* the court rejected a claim based on termination of an

employee who had reported to his employer a supervisor's suspected embezzlement from a former employer. Because the reporting had been to the employer, and not law enforcement, the court determined the interest involved was one between the employer and employee alone. "When the duty of an employee to disclose information to his employer serves only the private interest of the employer, the rationale underlying the *Tameny* cause of action is not implicated." (*Foley, supra,* 47 Cal.3d at pp. 670-671, fn. omitted.)

By contrast, in *Rojo* v. *Kliger, supra,* 52 Cal.3d 65, the court concluded termination based on sexual harassment implicated public interests even though the employee was the only one directly harmed. According to the court, article I, section 8 of the California Constitution "reflects a fundamental *public policy* against discrimination in employment—public or private —on account of sex. [Citations.]"[1] (*Id.* at p. 90, italics in original.) "The public policy against sex discrimination and sexual harassment in employment, moreover, is plainly one that 'inures to the benefit of the public at large rather than to a particular employer or employee.' (*Foley, supra,* 47 Cal.3d at p. 669.) No extensive discussion is needed to establish the fundamental *public* interest in a workplace free from the pernicious influence of sexism. So long as it exists, we are *all* demeaned." (*Rojo* v. *Kliger, supra,* 52 Cal.3d at p. 90, italics in original.)

■ As these cases demonstrate, the critical inquiry in assessing a *Tameny* claim is "whether the discharge is against public policy and affects a duty which inures to the benefit of the public at large rather than to a particular employer or employee." (*Foley, supra,* 47 Cal.3d at p. 669.) Only where some interest which transcends the employer-employee relationship is at stake will a *Tameny* claim lie. In addition, the public interest involved must be "substantial." (*Foley* at p. 670.)

■ Because a viable *Tameny* claim requires employer conduct implicating a substantial public interest, such a claim lies outside the compensation bargain. As explained in *Cole* (*supra,* 43 Cal.3d 148), the compensation bargain involves a tradeoff between the employer and employee whereby the employee gives up a wider range of damages potentially available in tort in exchange for relatively swift and certain payment of benefits without the necessity of proving fault. But where an employer's conduct implicates considerations of substantial public policy, interests beyond those of the employer and employee are involved. These interests are not protected by workers' compensation law and therefore must be accommodated outside the

---

[1]Article I, section 8 provides: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."

compensation bargain. We thus conclude a *Tameny* claim is not preempted by the exclusive remedy provisions of the workers' compensation law.

## IV

██ ██ We next consider whether plaintiff has stated a viable *Tameny* claim. Plaintiff contends his claim implicates three separate public policies: (1) freedom from termination without just cause, (2) the policy underlying the whistle-blower statute (Gov. Code, § 19683), and (3) the policy underlying the Officers Rights Act (Gov. Code, § 3300 et seq.). (Further statutory references to sections of an undesignated code are to the Government Code.) However, it is readily apparent the first of these alleged public policies is in fact private in nature, implicating rights existing between plaintiff and his employer alone. The same cannot be said of the other two.

██ The third (*Tameny*) count of the third amended complaint incorporates the allegations of count two, the whistle-blower claim. It further alleges plaintiff has been subjected to "direct threats, intimidation and harassment" because of his investigation and reporting of the health centers, has been prevented from "carrying out his obligations as a peace officer," and was terminated in retaliation for this investigating and reporting activity.

At the time of plaintiff's termination, section 19683 provided: "No state officer or employee nor any person whatsoever shall directly or indirectly use or threaten to use any official authority or influence in any manner whatsoever which tends to discourage, restrain, interfere with, coerce or discriminate against any other state officer or employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the Attorney General, or the Joint Legislative Audit Committee pursuant to Article 3 (commencing with Section 10540) of Chapter 4 of Part 2 of Division 2, or any other appropriate authority any facts or information relative to actual or suspected violation of any law of this state or the United States occurring on the job or directly related thereto. Any person guilty of such an act may be liable in an action for civil damages brought against him by the offended party. Notwithstanding the provisions of Section 19682, a violation of this section shall not be a misdemeanor." (Stats. 1979, ch. 584, § 2, pp. 1830-1831)

██ "The purpose of an action under the whistle-blower protection statute . . . is to provide redress to [state employees] for damages suffered as a consequence of the specific use of official power to deter a particular protected activity—the proper reporting of on-the-job or job-related unlawful government actions." (*Shoemaker II, supra,* 52 Cal.3d at pp. 21-22.) By insulating them from retaliation, section 19683 is designed to encourage

state officers and employees to investigate and report actual or suspected violations of law in or related to state employment.

In *Collier* v. *Superior Court* (1991) 228 Cal.App.3d 1117 [279 Cal.Rptr. 453], the Court of Appeal concluded a private sector employee terminated for reporting to his employer suspected illegal conduct by fellow employees can state a cause of action under *Tameny*. According to the court, this situation is distinguishable from *Foley* because the criminal conduct is ongoing. Thus, "[p]etitioner's report served not only the interests of his employer, but also the public interest in deterring crime and . . . the interests of innocent persons who stood to suffer specific harm from the suspected illegal conduct. . . . " (At pp. 1122-1123.)

In explaining the public policy implicated by the employer's conduct, the court stated: "Labor Code section 1102.5, subdivision (b), which prohibits employer retaliation against an employee who reports a reasonably suspected violation of the law to a government or law enforcement agency, reflects the broad public policy interest in encouraging workplace 'whistle-blowers,' [*sic*] who may without fear of retaliation report concerns regarding an employer's illegal conduct. This public policy is the modern day equivalent of the long-established duty of the citizenry to bring to public attention the doings of a lawbreaker. [Citation.] Even though the statute addresses employee reports to public agencies rather than to the employer and thus does not provide direct protection to petitioner in this case, it does evince a strong public interest in encouraging employee reports of illegal activity in the workplace. [Citation.]" (*Collier* v. *Superior Court, supra*, 228 Cal.App.3d at p. 1123.)

The public interest protected by section 19683 is self-evident. The statute does not deal with wrongdoing in employment generally but relates specifically to wrongdoing either in state employment or directly related thereto. It is difficult to imagine an activity more suffused with the public interest than the investigation and exposure of wrongdoing in public employment, whether that wrongdoing occurred in the past or is currently ongoing. Plaintiff's third amended complaint states a claim under *Tameny* for wrongful termination in violation of the public policy underlying the whistle-blower statute.

Similarly, defendants' alleged violation of the Officers Rights Act supports a *Tameny* claim. The third amended complaint alleges plaintiff was wrongfully terminated not only in retaliation for his whistle-blowing efforts

but also in retaliation for his exercise of the right to counsel under the Officers Rights Act.[2]

The Officers Rights Act secures to public safety officers certain political rights (§ 3302) and prescribes certain protections that must be afforded them in connection with investigations of misconduct involving them and punitive actions taken against them. (§§ 3303, 3305-3309.) It also protects officers from retaliation for the exercise of their rights under the act. (§ 3304. See *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 135 [185 Cal.Rptr. 232, 649 P.2d 874].) Among the protections specifically prescribed is the entitlement of a public safety officer to the presence of counsel during an interrogation which "focuses on matters which are likely to result in punitive action." (§ 3303, subd. (h).)

The policy behind the Officers Rights Act is stated in section 3301 as follows: "The Legislature hereby finds and declares that the rights and protections provided to peace officers under this chapter constitute a matter of statewide concern. The Legislature further finds and declares that effective law enforcement depends upon the maintenance of stable employer-employee relations between public safety employees and their employers. In order to assure that stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that this chapter be applicable to all public safety officers, as defined in this section, wherever situated within the State of California."

The rights and protections afforded by the Officers Rights Act benefit not only public safety officers but the public in general. By promoting stable employer-employee relations, the Officers Rights Act fosters a solid and secure public safety work force. (*Mounger* v. *Gates* (1987) 193 Cal.App.3d 1248, 1254 [239 Cal.Rptr. 18].) It also encourages peace officer cooperation in investigations of possible wrongdoing. (See *Williams* v. *City of Los Angeles* (1988) 47 Cal.3d 195, 201 [252 Cal.Rptr. 817, 763 P.2d 480].) Alleged violations of the Officers Rights Act therefore implicate duties "which inure[] to the benefit of the public at large" (*Foley, supra,* 47 Cal.3d at p. 669), transcending the employer-employee relationship and thus will support a *Tameny* claim.

---

[2]The third (*Tameny*) count of the third amended complaint alleges "[t]he reason relied upon by the Defendants, *as a pretext,* to terminate Plaintiff SHOEMAKER [insistence on the protection of the Officers Rights Act], was itself one contrary to public policy." (Italics added.) While this might suggest plaintiff does not consider his claim of protection under the Officers Rights Act as the reason for termination, earlier in the complaint plaintiff alleges "Defendant SHUTTLEWORTH terminated Plaintiff SHOEMAKER in specific retaliation for Plaintiff's effort to pursue the investigation of the Feminist Women's Health Centers *and for his exercise of his rights under [the Officers Rights Act]."* (Italics added.) These allegations were incorporated into plaintiff's *Tameny* claim.

## V

The trial court sustained demurrers to the third amended complaint on the ground plaintiff's allegations effectively stated a cause of action for malicious prosecution as to which defendants were entitled to immunity. Section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." If a public employee is immune from prosecution, section 815.2, subdivision (b), also immunizes the public employer. (*Scannell* v. *County of Riverside* (1984) 152 Cal.App.3d 596, 604 [199 Cal.Rptr. 644].)[3]

In *Hardy* v. *Vial* (1957) 48 Cal.2d 577 [311 P.2d 494, 66 A.L.R.2d 739], the Supreme Court held public employees are immune from liability for malicious prosecution in connection with a termination proceeding before an administrative agency. The plaintiff had been discharged from his employment as a college professor due to charges made by the defendants, both employees and nonemployees of the college, that he was guilty of gross immorality and unprofessional conduct. After a hearing, the State Personnel Board found the charges untrue and ordered the plaintiff reinstated. The plaintiff then sued the charging parties for malicious prosecution.

In denominating the plaintiff's claim as one for malicious prosecution, the *Hardy* court relied upon section 680 of the Restatement of Torts: " 'One who initiates or procures the initiation of civil proceedings against another before an administrative board which has power to take action adversely affecting the legally protected interests of the other, is subject to liability for any special harm caused thereby, if (a) the proceedings are initiated (i) without probable cause to believe that the charge or claim on which the proceedings are based is well founded, and (ii) primarily for a purpose other than that of securing appropriate action by the board, and (b) the proceedings have terminated in favor of the person against whom they are brought.' " (*Hardy*, *supra*, 48 Cal.2d at p. 580.) The court concluded the college employees were immune from prosecution. (*Id.* at p. 584.)[4]

More recently, in *Kemmerer* v. *County of Fresno* (1988) 200 Cal.App.3d 1426 [246 Cal.Rptr. 609], the plaintiff, an employee of the Fresno County Social Services Department, was terminated based on allegations he used his

[3]Section 815.2, subdivision (b) provides: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

[4]While *Hardy* was a presection 821.6 case applying common law immunity, section 821.6 was enacted in 1963 as a codification of prior case law. (*Scannell* v. *County of Riverside, supra*, 152 Cal.App.3d at p. 604.)

position to coerce payment on personal debts. After a hearing, the civil service commission ordered his reinstatement. Thereafter, the plaintiff sued the county and two of his superiors alleging, inter alia, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, and inducing breach of contract. (*Id.* at pp. 1431-1432.) The Court of Appeal concluded insofar as the complaint alleged tort theories of liability, it stated a cause of action within the scope of section 821.6 as to which the defendants were immune from suit. As described by the court, "[t]he investigation, the preliminary notice and the proceedings before the civil service commission come within the scope of an 'administrative proceeding' as that term is used in Government Code section 821.6. It follows that pursuant to section 821.6, [the defendants] are immune from tort liability for any acts done to institute and prosecute the disciplinary proceeding." (200 Cal.App.3d at p. 1437.)

 Accepting defendants' characterization of plaintiff's whistle-blower and *Tameny* claims as falling under the general rubric of malicious prosecution, we must decide whether section 821.6 immunity applies. Plaintiff contends section 19683 must be considered an exception to section 821.6 because the whistle-blower statute was enacted later, is the more specific of the two and to hold otherwise would lead to absurd results. Plaintiff's whistle-blower and *Tameny* claims are both grounded, the latter in part, on an alleged violation of section 19683. Plaintiff therefore concludes section 821.6 immunity applies to neither claim. Defendants contend *all* tort claims are expressly covered by the immunity statutes and policy considerations permit no exception for section 19683. While we find plaintiff's premises the more persuasive, we do not accept his conclusion in its entirety, finding instead the *Tameny*, but not the whistle-blower claim subject to immunity.

Section 821.6 applies to claims against a public employee arising from the initiation or prosecution of judicial or administrative proceedings. Section 19683 applies when any "state officer or employee [or] any person whatsoever . . . directly or indirectly use[s] or threaten[s] to use any official authority or influence in any manner whatsoever which tends to discourage, restrain, interfere with, coerce or discriminate against any other state officer or employee" because the latter has reported information relating to an actual or suspected violation of law. The coverage of sections 821.6 and 19683 overlaps where, as here, public employees are accused of using official authority to "discourage, restrain, interfere with, coerce and discriminate against" another public employee by means of a judicial or administrative proceeding.

 Generally, where two statutes deal with the same subject matter, the more specific controls. (*Rose* v. *State of California* (1942) 19 Cal.2d 713,

723-724 [123 P.2d 505].) However, "where two statutes do not purport to deal with the same subject matter, there is no need to resort to the rule of construction that the more specific statute controls. The statutes simply do not cover the same subject matter and therefore are not in conflict. [Citation.]" (*Shoemaker II, supra,* 52 Cal.3d at p. 21.) Yet where those statutes potentially apply to the same set of facts, it may become necessary to examine their scope and purposes to determine which controls. (*Ibid.*)

■ Section 821.6 covers the initiation or prosecution of judicial or administrative proceedings where the target may or may not be a state employee. The policy behind section 821.6 is to encourage fearless performance of official duties. (*Hardy* v. *Vial, supra,* 48 Cal.2d at pp. 582-583; *White* v. *Towers* (1951) 37 Cal.2d 727, 729-730 [235 P.2d 209, 28 A.L.R.2d 636].) State officers and employees are encouraged to investigate and prosecute matters within their purview without fear of reprisal from the person or entity harmed thereby. Protection is provided even when official action is taken maliciously and without probable cause.

As previously mentioned, the purpose underlying the whistle-blower statute is to provide redress to a limited class, state employees, for harm suffered by the use of official power to deter reporting of unlawful government activity. The statute is designed to encourage such reporting and thereby facilitate the detection and prosecution of official wrongdoing.

Because the scope and purposes of section 19683 are more narrow than those of section 821.6, the former prevails where the two are in conflict. To hold otherwise would reduce the protection otherwise afforded by section 19683 to situations where a public employee uses official authority to harm another public employee by means other than formal disciplinary proceedings, or where a nonpublic employee uses official authority to harm a public employee in any way. Because it is far more likely the party violating section 19683 will be a public employee, the result urged by defendants would immunize the most egregious conduct undertaken to discourage whistle-blowing. The right of the injured party to civil damages for such conduct, as expressly guaranteed by section 19683, would be rendered illusory.

■ In interpreting legislative enactments, "we indulge in a presumption that constitutional and legislative provisions were not intended to produce unreasonable results. [Citation.]" (*Barber* v. *Blue* (1966) 65 Cal.2d 185, 188 [52 Cal.Rptr. 865, 417 P.2d 401].) "Where a statute is susceptible of two constructions, one leading to mischief or absurdity, and the other consistent with justice and common sense, the latter must be adopted. [Citations.]" (*Lampley* v. *Alvares* (1975) 50 Cal.App.3d 124, 128-129 [123 Cal.Rptr. 181];

see *Stanley* v. *Justice Court* (1976) 55 Cal.App.3d 244, 253 [127 Cal.Rptr. 532].) ▮▮▮ Recognition of section 821.6 immunity for cases falling within section 19683 would largely emasculate the latter section and thereby frustrate the legislative purpose behind its enactment. Thus, violators of section 19683 are not entitled to section 821.6 immunity. We conclude defendants are not entitled to immunity in respect to plaintiff's section 19683 claim.

▮▮▮ Nevertheless, we believe plaintiff's *Tameny* claim is barred by section 821.6 immunity. As a claim for wrongful discharge, it falls squarely within section 821.6 as interpreted by *Hardy, supra,* 48 Cal.2d 577, and *Kemmerer, supra,* 200 Cal.App.3d 1426. The graveman of a *Tameny* claim is wrongful discharge against public policy. The sources of such policy, if not infinite, are unquantified and probably unquantifiable. Nothing in the whistle-blower statute suggests the Legislature intended that a *Tameny* claim against otherwise immune public employees would survive simply because, from among all those which theoretically might be implicated, the particular public policy in issue arose from that statute. A fortiori, a *Tameny* claim based on violation of the public policy underlying the Officers Rights Act also does not escape the effect of section 821.6 immunity.

▮▮▮ In section 19683 the Legislature provided that "any person guilty of [violating its terms] may be liable in an action for civil damages brought against him by the offended party." Since section 19683 is directed chiefly, if not exclusively, against state employees otherwise protected by section 821.6 immunity, and since its terms may clearly be violated by taking formal disciplinary proceedings against the "offended party" (who in all cases would be a state employee), it is clear to us that the application of section 821.6 immunity to the offending party is totally inconsistent with the design of section 19683. Beyond that, however, we find no inconsistency between section 19683 which itself creates "an action for civil damages" against the offending party and the availability to that offending party of section 821.6 immunity in respect to any other action where it otherwise would apply.

## VI

The trial court sustained demurrers to the third amended complaint on the grounds the claim filed with the state agency did not encompass the causes of action included in the complaint and was untimely as to causes of action accruing before January 15, 1982.

The Government Tort Claims Act (§ 810 et seq.), which abrogates common law immunity of state and local governmental entities, requires an

injured party first to submit a claim to the governmental entity in the form required by section 910. (§ 945.4.) This claim must include "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." (§ 910, subd. (d).) At all times relevant to this action, section 911.2 required such claim to be submitted within 100 days of accrual of a cause of action. (See Stats. 1963, ch. 1715, § 1, p. 3376.)

■ Addressing first the question of scope, plaintiff submitted to the Department a claim alleging he was terminated "for attempting to obtain proof that he had been previously misidentified in a complaint filed by a citizen" and "for refusing to submit a fourth written response to questions from his superiors without consultation with his attorney." The claim also alleged the termination was "a violation of traditional principles of reasonableness and fair play" and this interfered with plaintiff's "contractual rights to his position." Finally, the claim alleged "the dismissal was an interference with [plaintiff's] responsibility and duty to carry out the law."

Clearly, the claim submitted to the Department presaged allegations in the third (*Tameny*) count of violation of the Officers Rights Act. It also alerted defendants of allegations in the second and third counts of retaliation for plaintiff's whistle-blowing activities. Plaintiff's job as an investigator for the Department was to investigate and report on compliance with the law as it related to the Department's functions. When this investigation led to suspicion of wrongdoing by plaintiff's superiors at the Department, or other government employees, any interference with plaintiff's reporting duties implicated the whistle-blower statute.

■ A claim served on a governmental entity must fairly describe what that entity is alleged to have done. A theory of recovery not included in the claim may not thereafter be maintained. (See *Fall River Joint Unified School Dist.* v. *Superior Court* (1988) 206 Cal.App.3d 431, 434 [253 Cal.Rptr. 587]; *Donohue* v. *State of California* (1986) 178 Cal.App.3d 795, 802 [224 Cal.Rptr. 57].) However, while the circumstances described in a claim must substantially correspond with the causes of action pled, the claim need not conform to pleading standards. (*Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1082-1083 [195 Cal.Rptr. 576].) "The primary function of the [Government Tort Claims Act] is to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim and where appropriate, avoid litigation by settling meritorious claims. [Citations.]" (*Elias* v. *San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70, 74 [135 Cal.Rptr. 621].)

■ Although lacking in detail, the claim submitted by plaintiff was adequate to enable defendants to investigate whether there had been a

violation of the whistle-blower statute. It was therefore sufficient to comply with section 910.[5]

 Addressing next the question of timing, plaintiff was terminated December 23, 1981, and this was upheld on departmental review on January 11, 1982. (*Shoemaker II, supra,* 52 Cal.3d at p. 8.) Plaintiff submitted a claim to the Department on March 25, 1982, within 100 days of termination. For some inexplicable reason, the trial court concluded the third amended complaint was barred as to any claim accruing prior to January 15, 1982. Using instead 100 days before the claim was submitted as the appropriate cutoff date, the claim was timely as to all causes of action accruing after December 15, 1981.

"For purposes of calculating [] time limits, the date on which an action accrues is the date upon which it would be deemed to have accrued under the applicable statute of limitations. (Gov. Code, § 901.)" (*Loehr* v. *Ventura County Community College Dist., supra,* 147 Cal.App.3d at p. 1078.) In *Davies* v. *Krasna* (1975) 14 Cal.3d 502 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807], the court indicated a tort cause of action does not accrue until a plaintiff has suffered "appreciable harm" as a result of the tortious conduct. As explained by the court, "we have drifted away from the view held by some that a limitations period necessarily begins when an act or omission of defendant constitutes a legal wrong as a matter of substantive law. (See generally *Developments in the Law—Statutes of Limitations* (1950) 63 Harv.L.Rev. 1177.) Rather, we generally now subscribe to the view that the period cannot run before plaintiff possesses a true cause of action, by which we mean that events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages." (14 Cal.3d at p. 513.)

Until plaintiff was terminated, he did not suffer appreciable harm sufficient to justify legal action. It was this termination which gave life to both the second and third counts of the third amended complaint. Therefore, neither claim is time barred.

## VII

In *Shoemaker I* we concluded plaintiff's civil rights claim, the eighth count of the second amended complaint, states a viable cause of action. This conclusion was upheld by the Supreme Court. The Supreme Court also

---

[5]Having so concluded we need not address plaintiff's contention defendants waived any objection to the sufficiency of the claim by failing to give written notice of deficiency. (§ 910.8.)

concluded plaintiff's section 19683 claim, the second count of the third amended complaint, states a viable cause of action and is not barred by workers' compensation exclusivity. We now conclude that defendants are not protected by section 821.6 immunity in respect to that claim. Although we now conclude plaintiff's claim of wrongful termination in violation of public policy, the third count of the third amended complaint, also states a viable cause of action and is not barred by workers' compensation exclusivity, we also conclude defendants are entitled to section 821.6 immunity as to that claim. Finally, we conclude none of plaintiff's claims is barred by failure to comply with the Government Tort Claims Act.

The judgment is reversed insofar as it orders dismissal of the second count of the third amended complaint and the eighth count of the second amended complaint, and the matter is remanded with directions to overrule the demurrers to those counts. In all other respects the judgment is affirmed. Plaintiff is to recover his costs on appeal.

Scotland, J., and Raye, J., concurred.

A petition for a rehearing was denied February 21, 1992, and appellant's petition for review by the Supreme Court was denied April 16, 1992.