[No. C047452. Third Dist. Aug. 31, 2005.]

KEVIN BROWN, Plaintiff and Appellant, v.
DEPARTMENT OF CORRECTIONS et al., Defendants and Respondents.

**COUNSEL**

Garcia & Associates and Gaspar Garcia II for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Pamela Smith-Steward, Assistant Attorney General, Vincent J. Scally, Jr., and David I. Bass, Deputy Attorneys General for Defendants and Respondents Department of Corrections, Office of the Inspector General, D. L. Runnels and Thomas Felker.

No appearance for Defendants and Respondents High Desert Prison, Anthony Lewis and Mona Lisa Kathy.

**OPINION**

**DAVIS, Acting P. J.**—In this action for employment retaliation, plaintiff Kevin Brown (Brown) appeals from a judgment following a demurrer sustained without leave to amend. We agree with the trial court that Brown's action is foreclosed under the absolute privilege of Civil Code section 47,

subdivision (b). Consequently, we affirm the judgment in favor of all the defendants.[1]

BACKGROUND

In reviewing a general demurrer sustained without leave to amend, we must determine whether, assuming the facts alleged in the complaint are true, a cause of action has been or can be stated. (*Rogoff v. Grabowski* (1988) 200 Cal.App.3d 624, 628 [246 Cal.Rptr. 185]; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We may also consider matters that may be judicially noticed. (*Blank v. Kirwan, supra,* at p. 318.) The pertinent facts alleged in the complaint, and those judicially noticed by the trial court without dispute here, are as follows.

Brown is employed as a correctional officer with the defendant Department of Corrections (Corrections) at the defendant High Desert Prison (High Desert).

On January 29, 2003, Brown telephoned the defendant Office of the Inspector General (OIG). (The OIG is a prison oversight entity. (Pen. Code, § 6125 et seq.).) Brown informed one of the OIG's operators, defendant Mona Lisa Kathy (Kathy), that he had been assaulted and battered on the job by a Lieutenant Briddle and harassed by a Sergeant Keating. At no time did Brown convey threats to anyone, but Kathy asked, " 'well, could you kill him?' " This was not at all what Brown was attempting to communicate; his only request was to be left alone. Kathy asked Brown three times if he could kill. Brown repeatedly assured Kathy that he had " 'been praying' " and " 'was not ready to go off.' "

Nonetheless, Kathy reported to defendant Anthony Lewis (Lewis), the OIG's assistant chief deputy, that Brown had made a threat against his superior officers. Lewis reported this threat to High Desert officials, defendants Thomas Felker (Felker) and Warden David Runnels (Warden Runnels). These officials, in turn, reported this threat to the Susanville police, who arrested Brown. All charges against Brown were dropped, however.

The trial court took judicial notice of Lewis's report (termed the OIG Memo) to the High Desert officials. In that report, Brown is additionally quoted as saying to Kathy in the January 29, 2003, telephone call, that, as a result of Briddle's alleged mistreatment of him, Brown " 'could lose it, and if he ever lost it he could kill him [Briddle].' " Lewis forwarded this information to High Desert so High Desert, pursuant to its law enforcement duties, could take the action it deemed appropriate and prudent.

---

[1] The defendants named in Brown's complaint include the Department of Corrections, High Desert Prison, Office of the Inspector General, and Warden Runnels, Anthony Lewis, Thomas Felker and Mona Lisa Kathy, individually and in their official capacities.

In the complaint, Brown also alleges that Warden Runnels brought an action against him requesting a restraining order and preliminary injunction. (See Code Civ. Proc., § 527.8 [employer may request injunctive relief against threats of violence toward employees].) Judge Bradbury (the trial judge in the present action as well) denied this requested injunctive relief, ruling that Brown had not made the legally required "credible threat of violence" in his telephone call to the OIG. (See Code Civ. Proc., § 527.8, subds. (a), (b), (f).) In the present action, Judge Bradbury took judicial notice of this ruling. The ruling noted that the alleged credible threat—the basis for the requested preliminary injunction—had not been shown by the required standard of clear and convincing evidence, but that Warden Runnels had acted properly and prudently in bringing his request for injunction in response to the information he had received. (See Code Civ. Proc., § 527.8, subds. (a), (f).)

In his complaint, Brown alleges that the OIG, Corrections, and High Desert retaliated against him, through the above-described activities, for his reporting of Briddle and Keating to the OIG; this damaged him and he had to fight to keep his job. He bases his retaliation claims on Labor Code section 1102.5 (an employer may not retaliate against an employee for disclosing to a governmental or law enforcement agency what the employee reasonably believes is a legal violation) and Government Code section 8547.8 (a whistleblower protection statute that protects state employees from damages suffered for reporting job-related unlawful government actions).

The trial court sustained the defendants' demurrer without leave to amend, ruling that their conduct was "privileged under Civil Code § 47[, subdivision (b)] as applied by the Supreme Court in *Hagberg v. California Federal Bank* (2004) 32 Cal.4th [350] [7 Cal.Rptr.3d 803, 81 P.3d 244]." We agree.

Discussion

Civil Code section 47, subdivision (b) (section 47(b)), bars a civil action for damages based on statements made, as pertinent here, in any judicial proceeding, in any official proceeding authorized by law, or in the initiation or course of any mandate-reviewable proceeding authorized by law. (§ 47(b)(2), (3) & (4); *Hagberg v. California Federal Bank, supra,* 32 Cal.4th 350, 360 (*Hagberg*).) Section 47(b) establishes an " 'absolute' " privilege for such statements, and bars all tort causes of action based on them except a claim for malicious prosecution (although public employees and employers may have an additional statutory immunity for malicious prosecution). (*Hagberg, supra,* 32 Cal.4th at p. 360; Gov. Code, §§ 821.6, 815.2, subd. (b).)

" '[S]ection 47 gives all persons the right to report crimes to the police, the local prosecutor or an appropriate regulatory agency, even if the

report is made in bad faith.' " (*Hagberg, supra,* 32 Cal.4th at p. 365, quoting *Cabesuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101, 112 [80 Cal.Rptr.2d 60] (*Cabesuela*).) " '[A] communication concerning possible wrongdoing, made to an official governmental agency such as a local police department, and which communication is designed to prompt action by that entity, is as much a part of an "official proceeding" as a communication made after an official investigation has commenced. [Citation.] After all, "[t]he policy underlying the privilege is to assure utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing." [Citation.] . . . The importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity outweighs the occasional harm that might befall a defamed individual. Thus the absolute privilege is essential.' " (*Hagberg, supra,* 32 Cal.4th at pp. 364–365, quoting *Williams v. Taylor* (1982) 129 Cal.App.3d 745, 753–754 [181 Cal.Rptr. 423].) In short, the section 47(b) absolute privilege applies to "communications intended to instigate official investigation into [suspected] wrongdoing." (*Hagberg, supra,* 32 Cal.4th at p. 369; see also p. 364.) Statements made to prompt an official investigation that may result in the initiation of judicial proceedings fall within the section 47(b) privilege as well. (*Hagberg, supra,* 32 Cal.4th at pp. 361–364.)

*Hagberg* applied these principles in the following context. A Hispanic woman, with appropriate identification, sought to cash a check at her bank. The bank mistakenly thought the check was counterfeit, called the police, and the woman was patted down, handcuffed and arrested while in the bank. (*Hagberg, supra,* 32 Cal.4th at pp. 355–356.) The court in *Hagberg* concluded that the section 47(b) privilege barred the woman's complaint against the bank for race discrimination, false arrest, false imprisonment, slander, invasion of privacy, intentional infliction of emotional distress, and negligence, because the bank's statements to the police concerned suspected criminal activity. (32 Cal.4th at pp. 357, 375, 376.)

Here, Brown called the OIG to report serious on-the-job misbehavior by his superior officers. So far, so good. (See former Pen. Code, § 6128, as amended (Stats. 1999, ch. 918, § 13) [at the time of Brown's call, covering, in part, communications to the prison-oversight OIG from Corrections employees regarding variance with Corrections policies and procedures].) But during Brown's call, OIG personnel perceived that Brown was making criminal threats of violence against one or both of these officers. The OIG reported these threats to High Desert officials pursuant to the officials' "law enforcement duties so that you might take that action you deem appropriate and prudent." The High Desert officials relayed the threats to the Susanville police, who arrested Brown. The charges against Brown were dropped, and Warden Runnels's petition for a preliminary injunction against Brown was

denied, but the trial court noted that Warden Runnels had acted properly and prudently in bringing the petition.

Brown's complaint for employment retaliation against the OIG, Corrections, High Desert, and their personnel, stems from the statements that the OIG made to High Desert—pursuant to the latter's law enforcement duties—to officially take action on the suspected criminal threats of violence that Brown had uttered to the OIG regarding his superior officers. These statements from the OIG, together with High Desert's relayed statements to the Susanville police, were intended to instigate official investigation and action into suspected criminal wrongdoing on Brown's part, and therefore fall squarely within the parameters of the section 47(b) privilege discussed, *ante*. The judicial proceeding in which Warden Runnels sought a preliminary injunction against Brown falls within the section 47(b) privilege as well, because that proceeding was likewise based on these privileged statements. The present matter is akin to *Cabesuela*, where the court held that the absolute privilege of section 47(b) applied to a company's statement to the police that one of its employees had apparently threatened his supervisor with violence. (*Cabesuela, supra,* 68 Cal.App.4th at pp. 106, 111–112.)

Brown argues that applying the section 47(b) privilege here to defeat his retaliation complaint will deal a death blow to the state employee California Whistleblower Protection Act contained in Government Code section 8547 et seq. (Whistleblower Act), and the anti-employment-retaliation provision of Labor Code section 1102.5. As we shall explain, we disagree.

█ These two anti-retaliation statutes furnish the basis for Brown's retaliation complaint. The Whistleblower Act is designed to encourage state employees to report waste, fraud, abuse of authority, violation of law, or threat to public health, by prohibiting any retribution regarding such reporting; the anti-retaliation Labor Code provision similarly protects employees in general who report legal violations or refuse to participate in such violations. (Gov. Code, §§ 8547.1, 8547.3; Lab. Code, § 1102.5.) Brown maintains that all an entity has to do to get around these protective statutes is to accuse the whistleblower or complaining employee of a crime and hide behind the privilege afforded by section 47(b). Brown argues that section 47(b) conflicts with the Whistleblower Act; and, being more specific than section 47(b), the Whistleblower Act applies rather than the section 47(b) privilege.

In support of these arguments, Brown cites this court's decision in *Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407 [4 Cal.Rptr.2d 203] (*Shoemaker*). In *Shoemaker*, the trial court sustained, without leave to amend, a demurrer to a complaint filed against the Department of Health Services by a former department investigator. The investigator alleged he was wrongfully

terminated through administrative proceedings after uncovering wrongdoing that was tacitly approved by the Department. (*Id.* at pp. 1413–1416, 1422.) The trial court concluded that the allegations of the investigator's complaint in effect stated a cause of action for malicious prosecution as to which the Department was entitled to immunity under Government Code section 821.6, providing: " 'A public employee [and his public employer under Gov. Code, § 815.2, subd. (b)] is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.' " (2 Cal.App.4th at p. 1422; see Gov. Code, § 815.2, subd. (b).)

■ In *Shoemaker*, we disagreed with this conclusion of the trial court. Accepting the characterization of the plaintiff's complaint as falling under the general rubric of malicious prosecution, we concluded that the Government Code section 821.6 immunity for such prosecution did not apply to the plaintiff's whistleblower claim (this claim was made under the former but similar statute to the present Whistleblower Act, former Government Code section 19683, and claimed a retaliatory termination for the whistleblowing by means of an administrative proceeding). (*Shoemaker, supra,* 2 Cal.App.4th at p. 1423.) We noted that the coverage of the immunity statute and the whistleblower statute conflicted, where, as in *Shoemaker*, "public employees [and their employers] [were] accused of using official authority to 'discourage, restrain, interfere with, coerce and discriminate against' [a whistleblowing] public employee by means of a judicial or administrative proceeding." (2 Cal.App.4th at p. 1423.) Since the whistleblower statute was narrower in purpose and scope than the immunity statute, the whistleblower statute prevailed where the two conflicted. (2 Cal.App.4th at p. 1424.) Because the whistleblower statute was directed chiefly, if not exclusively, against state employees and employers who otherwise would be protected by the immunity statute, to confer immunity on the public employee or employer who violated the whistleblower statute (by firing the whistleblower in an administrative proceeding) would render the protection afforded by the whistleblower statute largely illusory. (*Shoemaker, supra,* at pp. 1423–1425.)

Whatever the merits of Brown's arguments in the sea of legal abstraction, those arguments run aground here in light of the factual allegations of Brown's complaint and the matters of which judicial notice has been taken without dispute. In light of those allegations and judicially noticed matters, here there was no conflict between the privilege of section 47(b) and the anti-retaliatory provisions of the state employee Whistleblower Act (Gov. Code, § 8547 et seq.) and Labor Code section 1102.5. Defendants did not report on or retaliate against Brown for blowing his whistle about supervisorial misbehavior, but for making apparent criminal threats of violence against the supervisors, threats whose seriousness is documented in the allegations of Brown's complaint and in matters that have been judicially noticed without

dispute. Defendants reported these apparent criminal threats of violence to appropriate official channels for investigation and action, rendering these reports within the absolute privilege of section 47(b) without raising any conflict with the Whistleblower Act or with Labor Code section 1102.5. In contrast to the whistleblower in *Shoemaker*, Brown uttered threatening statements suspected to be criminal in themselves and it was these statements that led to the actions taken against him on which he bases his retaliation complaint here.

██ In addition, as just noted, Brown's retaliation action all stems from the threat-like statements he made to the OIG regarding Lieutenant Briddle and Sergeant Keating. At the time of Brown's statements to the OIG, Penal Code section 6128 provided that the OIG could receive information from any individual, including Corrections employees, "that may describe a variance from departmental investigatory policies and procedures" (former Pen. Code, § 6128, as amended (Stats. 1999, ch. 918, § 13) [the statute now reads, "that may describe an improper governmental activity"].) With some exceptions, the OIG is to keep this information and the identity of the informant confidential; one of the former exceptions was that disclosure was allowed "to a law enforcement agency in the furtherance of its duties." (Former Pen. Code, § 6128, subds. (a), (c) [a similar, broader exception now applies].) As shown by a matter judicially noticed by the trial court (the OIG Memo), the OIG forwarded Brown's threat-like statements to High Desert pursuant to the latter's "law enforcement duties so that you might take that action you deem appropriate and prudent." The OIG's disclosure to High Desert of Brown's threat-like statements was proper under the version of section 6128, in effect at the time.

██ Finally, the *Hagberg* court recognized that the section 47(b) absolute privilege has been applied compatibly in the context of the Whistleblower Act of Government Code section 8547 et seq. *Hagberg* noted with approval the conclusion in *Braun v. Bureau of State Audits* (1998) 67 Cal.App.4th 1382 [79 Cal.Rptr.2d 791], that the State Auditor's "investigation and its report to an enforcement agency constituted an 'official proceeding' and were subject to the absolute privilege [of section 47(b)]—just as initial complaints made by whistleblowers to the State Auditor necessarily would be privileged." (*Hagberg, supra,* 32 Cal.4th at p. 363, italics omitted; see *Braun, supra,* 67 Cal.App.4th at pp. 1389–1391.) Similarly, here, Brown's whistleblowing regarding the misbehavior of his supervisors was privileged under section 47(b), but not his apparent criminal threats of violence against them, and the OIG's report of those threats to an enforcement agency (High Desert) was privileged as well under section 47(b).

██ Since the defendants' statements, reports and actions regarding Brown's apparent criminal threats of violence were absolutely privileged

under section 47(b), Brown cannot maintain an action against the defendants based on those statements, reports and actions.

DISPOSITION

The judgment is affirmed.

Raye, J., and Butz, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 30, 2005.