[No. B022005. Second Dist., Div. Three. July 24, 1987.]

PATRICK O'SHEA, Plaintiff and Appellant, v.
GENERAL TELEPHONE COMPANY OF CALIFORNIA,
Defendant and Respondent.

COUNSEL

Daniel C. Lavery for Plaintiff and Appellant.

H. Ralph Snyder, Jr., Richard E. Potter, Mark F. Sullivan, Robert H. Wyman, Robert N. Herrera and Lawrence A. Valdivieso for Defendant and Respondent.

OPINION

LUI, Acting P. J.—Patrick O'Shea appeals from the summary judgment granted in favor of his former employer, respondent General Telephone Company of California. Appellant's lawsuit was based on statements made by respondent to the California Highway Patrol (CHP) about appellant when the CHP conducted a background employment investigation of appellant. The trial court found the communication to be absolutely privileged. We agree, and we affirm the summary judgment.

## PROCEDURAL BACKGROUND

In his first amended complaint, appellant alleged that the following statements were made about him by his former supervisors when they were contacted by Officer Berg of the CHP: (1) He was discharged because he violated company ethics. (2) He received his first five-day suspension approximately within sixty days of his termination. (3) He would argue with customers rather than turn the call over to a supervisor as company policy required. (4) One week after appellant returned to work he was in trouble and suspended again. (5) On the last occasion appellant took the customer's phone number, had an argument with the customer, and called him at his home, stating in essence that appellant was going to sue the customer for causing him to get suspended. (6) The customer brought in a tape recording of appellant's threatening phone call and when the company found out, appellant was discharged for violating company ethics. Appellant alleged that these statements were made with express and implied malice and that they were false and had a tendency to and did injure his good name, reputation, and business.

The theories alleged in the first amended complaint were slander, interference with prospective advantage, negligent infliction of emotional distress, intentional infliction of emotional distress, and violation of Labor Code section 1050.[1]

The issues raised in the motion for summary judgment included whether the statements were true, whether appellant consented to the communication, and whether the statements were privileged. The trial court indicated tentatively that it would grant the motion for summary judgment in that "[t]here is an absolute privilege and in fact a duty on the part of citizens to communicate freely with an investigating agency under the circumstances of this case and . . . the privilege in this case was necessary as a necessary element of the need of law enforcement to hire persons who are qualified to protect the public. [¶] As to subsidiary issues such as malice etc., matter is ordered to stand *submitted*." (Italics in original.)

On June 6, 1986, the court issued a second minute order, restating the above language and adding: "Since an absolute privilege exists, defendants

---

[1] Labor Code section 1050 provides: "Any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor."

Labor Code section 1054 provides: "In addition to and apart from the criminal penalty provided any person or agent or officer thereof, who violates any provision of sections 1050 to 1052, inclusive, is liable to the party aggrieved, in a civil action, for treble damages. Such civil action may be brought by such aggrieved person or his assigns, or successors in interest, without first establishing any criminal liability under this article."

herein could only be found liable upon a showing of actual malice. Plaintiff has failed to show by admissible evidence that a triable issue of fact exists as to actual malice on the part of these defendants. Defendants have established that their communication to the investigating officer was made as a direct result of inquiry on the part of the officer as to background information regarding plaintiff. There is no evidence of an independent, evil motive for disclosure of facts regarding plaintiff's employment history and the circumstances surrounding his termination, which rise to the level of actual malice."

The notice of appeal states that it is "from the Order of Dismissal upon the sustaining of defendant General Telephone Company of California's motion for summary judgment, which was taken under submission on April 21, 1986, after oral argument and a Minute Order thereafter issued June 6, 1986, and mailed to the parties June 9, 1986 . . . ." We have not found an order of dismissal in the record on appeal, and we shall treat the appeal as one from the summary judgment.[2]

## MOTION FOR SUMMARY JUDGMENT

The issues about which the parties argued in the motion for summary judgment include consent, privilege, the truth of the statements, and whether or not appellant would have been hired by the CHP regardless of any falsity in the statements.

Appellant's position was that the statements made were false in that: (1) he was not discharged because he violated "company ethics" but because he did not "upper refer" disgruntled customers; (2) his first suspension was not a five-day suspension but was a four-day suspension; (3) there were only a few instances of arguing with customers; (4) he was suspended 17 days after his first suspension, not one week thereafter; (5) while admitting that he had an argument with a customer and called the customer at home, stating that he was going to sue the customer, appellant denied that he "took" the customer's home phone number and instead argued that he remembered the phone number; (6) appellant argued that he called the customer after he was terminated and not before.[3] In his own deposition, appellant admitted that he did make a mistake in handling particular calls and that he should

---

[2] Subdivision (l) of Code of Civil Procedure section 437c provides in part: "A summary judgment entered under this section is an appealable judgment as in other cases."

[3] Respondent argues that the call was made before termination because, at the time appellant called the customer, appellant was pursuing union grievance procedures that could possibly reinstate him. Appellant claims he was given official notice of termination before making the call, which in any event he asserts was not the cause of his termination. Because of our determination that the absolute privilege of Civil Code section 47, subdivision 2, bars this suit, we need not pursue the question of when the termination occurred.

have given them to a supervisor. He admitted in his deposition that he was hoping nothing would come out about his failure to "upper refer" the matter on July 8, 1982. He had heard from his union that respondent's policy was not to give out information about terminated employees.

Respondent, in addition to arguing that the statements were true or substantially true, also contended that, by signing the release form for the CHP, appellant consented to any statements that might be made and, therefore, could not sue for defamation.[4] Appellant does not deny that he signed the authorization but does dispute its effect.

Regarding the issue of privilege, it is undisputed that the information was obtained by the CHP as part of a background investigation of appellant who was seeking a position as a patrol officer. There is some dispute as to whether or not appellant's former supervisors violated respondent's policy by disclosing any facts regarding his work performance. Appellant claims that respondent's policy precluded such revelations, and respondent claims that appellant relied on a draft of a policy and that the actual policy would permit the revealing of this information. In any event, respondent argues that the information in the statements is true or substantially true and therefore not defamatory regardless of the existence of a privilege. (Civ. Code, §§ 44, 45, 46.)

If the privilege is a qualified one rather than an absolute one, malice becomes an issue. At one point, appellant claimed that he had a "certain rapport" with his supervisors but at other points admitted that there had been some hostility with the two interviewed by the CHP.

Regarding the CHP's determination not to hire appellant, the transcript of his final interview with the CHP reveals that the investigating officers were very concerned about his ability to deal with the public. Appellant admitted making a "very threatening phone call" to a customer and conceded that it was the wrong thing to do; appellant referred to calling the customer back as "a mistake that I'll always regret for the rest of my life." He also admitted that customer contact over the phone "was just driving

---

[4] The release signed by appellant stated, "I have applied to the State of California for a position with the California Highway Patrol which requires a personal background check. I hereby authorize their investigation of my previous record and character, and to ascertain any and all information which may concern my record and character, whether the same is of record or not. This authorization includes, but is not limited to, bank, credit, school or Selective Service records, and releases all persons, organizations or corporations from any charge because of furnishing said information. This authorization, or a photo copy of it, when presented in person by an officer of the California Highway Patrol, or through the U.S. mails in conjunction with an official request is valid for 180 calendar days from the date I indicated below."

me up the walls." He thought that he could relate better in a person to person contact, but the officers were clearly concerned about his ability to get along with people.

The CHP investigator's recommendation against hiring appellant was based on "the information developed at GTE" in that appellant had problems dealing with irate persons and that this resulted in his termination. The officer determined that appellant "does not possess the necessary characteristics of maturity, good judgment and attitude toward work, which are essential requirements for a staff traffic officer/cadet." Appellant was notified by letter on March 23, 1984, that based on information developed during the background investigation, the department decided to withhold his name from certification.[5] Through this letter, appellant was informed that he could appeal the action to the state Personnel Board, an action that would have permitted him to clarify the facts regarding his employment with respondent. He decided not to do so and instead contacted an attorney to sue respondent for the allegedly false statements.

A declaration by the investigating officer, submitted by respondent, stated that Officer Berg believed appellant to be unsuited for the CHP because of his difficulty in dealing with the public. In addition, appellant had not heeded the lesson of his suspension. Berg believed that the timing of the

---

[5] The letter provided: "This is in regard to your eligibility on the employment list for State Traffic Officer Cadet. As part of the selection procedure, the Department of California Highway Patrol conducts an extensive background investigation on each candidate certified for employment. Based on information developed during your background investigation, it is the Department's decision to withhold your name from certification under the authority delegated to us by the State Personnel Board.

"The facts discussed with you in detail during your Final Interview with our Investigator, indicate you lack the general qualifications for employment mandated by State Personnel Board Rule 172 and Government Code Section 18935. The decision to withhold your name from certification is based on the information shown on the attached.

"Should you have any questions regarding this action or additional information you believe the Department may have overlooked in its investigation of your background, please contact the Applicant Investigations Unit at the address and phone number shown above.

"*If you believe the withhold action is improper and you do not wish to provide the Department with additional information, you may appeal the action to the State Personnel Board by contacting the Appeals Division, 801 Capitol Mall, Sacramento, CA 95814.* An appeal must state in writing the facts, information, or circumstances upon which it is based and must be received by the Personnel Board within 30 days after the postmark of this letter. You may phone the Appeals Division at (916) 322-2777 for additional information. . . ." (Italics added.)

The attachment to the above letter stated: "REASON(S) FOR WITHOLD FROM CERTIFICATION FOR APPOINTMENT

". . . . . . . . . . . . . . . .

"The Department is concerned with your *termination* from General Telephone on 7-12-82, for *violating company policy.*

"*Our investigation revealed that you received several reprimands prior to receiving two suspensions, which culminated in your termination.*" (Italics added.)

phone call to the customer is irrelevant. His recommendation to deny employment to appellant would not have changed if the representations by respondent had been more technically correct. He was concerned with appellant's lack of tact and professionalism and his complete lack of concern for standards and reputation of his former employer.

## CONTENTIONS ON APPEAL

Appellant's contentions on appeal may be summarized as follows:

1. The false statements issued by appellant's former supervisors to an investigator from the CHP after appellant had been terminated from employment were not absolutely privileged.

2. Appellant did not consent to being defamed by his supervisors.

3. The statements were not true nor substantially true, so that the defense of truth is not a ground to support the granting of the motion for summary judgment.

4. There are numerous issues of fact which should have precluded the trial court from granting the motion for summary judgment.

Respondent's argument on appeal may be summarized as follows:

1. Case law and public policy make it clear that a communication with a governmental agency is absolutely privileged, particularly if any decision made on the basis of that communication can lead to the institution of an administrative hearing and review by administrative mandamus.

2. Appellant's consent bars the action.

3. Even if respondent only had a qualified privilege, appellant failed to present evidence raising a triable issue of malice.

4. The statements of appellant's supervisors were technically true or substantially true, entitling respondent to judgment as a matter of law.

5. The circumstances demonstrate, at best, a slander "per quod" and there is no evidence of damages.

6. Sanctions are appropriate in this case.

DISCUSSION

1. *The Trial Court Did Not Err in Granting Summary Judgment Because the Communications Herein Were Absolutely Privileged*

■ "Summary judgment granted under Code of Civil Procedure section 437c is appropriate only if the affidavits and supporting papers of the moving party would sustain a judgment in his favor and the party opposing the motion has failed to show by affidavit or supporting documents such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of material fact. (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 596 . . . ; *Bank of Beverly Hills* v. *Catain* (1982) 128 Cal.App.3d 28, 33-34 . . . .) Where the moving party is the defendant he must either negate a necessary element of the plaintiff's case or state a complete defense. [Citation.] If any triable issue of fact does exist then it is error to have granted the motion for summary judgment. [Citation.]" (*Cuenca* v. *Safeway San Francisco Employees Fed. Credit Union* (1986) 180 Cal.App.3d 985, 992-993 [225 Cal.Rptr. 852].)

Civil Code section 47, subdivision 2 provides that a privileged publication or broadcast is one made "[i]n any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure [Writs of Mandate] . . . ."

In addition to the absolute privilege provided by subdivision 2, subdivision 3 of section 47 provides that a privileged publication or broadcast is one made "[i]n a communication, *without malice,* to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information." (Italics added; see *Kelly* v. *General Telephone Co.* (1982) 136 Cal.App.3d 278, 285 [186 Cal.Rptr 184].)

It is clear to us that, assuming there is no malice by respondent, subdivision 3 of section 47 would afford a privilege to the communication solicited by the CHP from respondent. ■ However, if the absolute privilege of subdivision 2 applies, as we believe it does, there is no need to address the other issues raised.[6]

---

[6]The trial court's minute order stated that there was an absolute privilege and then proceeded to discuss the issue of malice, finding that no material fact regarding malice had been raised and so summary judgment was appropriate. If there is a finding of absolute privilege,

Government Code section 1031, subdivision (d) provides that each class of public officers or employees declared by law to be peace officers shall meet all of the following minimum standards: "Be of good moral character, *as determined by a thorough background investigation. . . .*" (Italics added.)

The CHP, a governmental entity (cf. *Cuenca, supra,* 180 Cal.App.3d at p. 995; *Slaughter* v. *Friedman* (1982) 32 Cal.3d 149, 156 [185 Cal.Rptr. 244, 649 P.2d 886]), was conducting this thorough background investigation regarding appellant's fitness when the allegedly defamatory statements were obtained. Such inquiries and responses are protected by Civil Code section 47, subdivision 2. Even unsolicited communications from citizens to governmental agencies have been held protected by the absolute privilege of Civil Code section 47, subdivision 2. (*Williams* v. *Taylor* (1982) 129 Cal.App.3d 745, 753-754 [181 Cal.Rptr. 423]; *Imig* v. *Ferrar* (1977) 70 Cal.App.3d 48, 54 [138 Cal.Rptr. 540]; *Johnson* v. *Hydraulic Research & Mfg. Co.* (1977) 70 Cal.App.3d 675, 684, fn. 7 [139 Cal.Rptr. 136]; *King* v. *Borges* (1972) 28 Cal.App.3d 27, 34 [104 Cal.Rptr. 414].) The rationale of those cases is obvious in the case before us; it is to encourage the utmost freedom of communication between citizens and public authorities. The Legislature has wisely required a thorough background investigation of the character of those who wish to be peace officers. It is essential that former employers of those considered for peace officer positions feel free to discuss in detail the characteristics of their former employees, now being considered for the extremely demanding tasks undertaken by the peace officers of this state. (See also *Murden* v. *County of Sacramento* (1984) 160 Cal.App.3d 302, 311 [206 Cal.Rptr 699].)

As in any situation where a privilege may shield those who have committed otherwise wrongful acts,[7] considerations of public policy must predominate. (See *Carden* v. *Getzoff* (1987) 190 Cal.App.3d 907, 915 [235 Cal.Rptr. 698]; *Imig* v. *Ferrar, supra,* 70 Cal.App.3d at p. 56.)[8] As the trial court stated, "[a]s a matter of law, there is an absolute privilege, and in fact a duty, for citizens to communicate openly and freely with an investigating officer seeking background information on a candidate for employment with a public law enforcement agency. The privilege under these circumstances is

the issue of malice is not relevant. (*Tiedemann* v. *Superior Court* (1978) 83 Cal.App.3d 918, 924 [148 Cal.Rptr. 242]; *Cuenca, supra,* 180 Cal.App.3d at p. 993.)

[7] Because of our resolution of this appeal on the basis of an absolute privilege, it is not necessary for us to decide the issue of whether the statements made by respondent were true or substantially true.

[8] Furthermore, appellant's reasonable interest in having prospective employers receive only true information about him is met through the administrative procedures of the state Personnel Board. His final interview with the CHP put him on notice that respondent had supplied derogatory information about his employment history; he could have sought review of the decision not to hire him, clearing or at least clarifying the record. He did not do so.

a necessary element of the need for law enforcement to hire persons who are qualified to protect the public."

2. *In View of Our Determination That There Was an Absolute Privilege, the Trial Court's Decision Not to Grant the Continuance Need Not Be Reviewed*

Appellant contends that the trial court erred in failing to grant a continuance to obtain the reporter's transcripts of various depositions. Any requested information, however, would not negate the absolute privilege. Therefore, we need not decide if respondent is correct in arguing that the reporter's transcripts were available to appellant.

Neither are we concerned with appellant's repetitive assertion that the trial court was somehow bound by previous rulings on demurrers, in which the privilege was either not considered or rejected. (See *Ion Equipment Corp.* v. *Nelson* (1980) 110 Cal.App.3d 868, 877 [168 Cal.Rptr 361], a case involving judgment on the pleadings granted following the overruling of a demurrer on the same grounds; there is no reason such a policy should not apply to summary judgment as well.)

3. *Sanctions Are Inappropriate*

Respondent requests that sanctions be awarded against appellant. While we have found appellant's contentions to be without merit, we do not find them to be frivolous. In our view, sanctions are inappropriate in this case. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].)

DISPOSITION

The summary judgment is affirmed.

Danielson, J., and Arabian, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 14, 1987.