[No. A075423. First Dist., Div. Four. Nov. 23, 1998.]

ODELIA S. BRAUN, Plaintiff and Appellant, v.
BUREAU OF STATE AUDITS et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.B.

COUNSEL

Lawless, Horowitz & Lawless, Barbara A. Lawless and Carol Belcher for Plaintiff and Appellant.

Bion M. Gregory, Peter Melnicoe, Diepenbrock, Wulff, Plant & Hannegan and Charity Kenyon for Defendants and Respondents.

OPINION

HANLON, P. J.—Odelia S. Braun appeals from the judgment in favor of respondents the Bureau of State Audits (Bureau), State Auditor Kurt R. Sjoberg, and Bureau auditors Ann Campbell and Dore Tanner, after their demurrer to appellant's complaint was sustained without leave to amend. Appellant sued respondents for damages arising from the State Auditor's 1994 investigation and report of the Center for Prehospital Research and Training (CPRT) at the University of California, San Francisco (UCSF), where appellant worked.

This appeal presents the first reported challenge to the State Auditor's conduct of an investigative audit under the Reporting of Improper Governmental Activities Act (Gov. Code, § 8547 et seq.; hereafter the Reporting Act). In the published portion of this opinion, we conclude that statements made in the CPRT audit report were privileged under Civil Code section 47, subdivision (b), and thus that appellant's tort claims based on those statements were properly dismissed. In the unpublished portion of the opinion, we uphold the dismissal of appellant's "due process" claims. The judgment is affirmed.

## I. BACKGROUND

### A. *The Statutory Scheme*

The Reporting Act is a "whistleblower" law enacted to encourage the disclosure of improper governmental activities. (Gov. Code, § 8547.1.) An

"improper governmental activity" is broadly defined as any "that (1) is in violation of any state or federal law or regulation, including, but not limited to, corruption, malfeasance, bribery, theft of government property, fraudulent claims, fraud, coercion, conversion, malicious prosecution, misuse of government property, or willful omission to perform duty, or (2) is economically wasteful, or involves gross misconduct, incompetency, or inefficiency." (Gov. Code, § 8547.2, subd. (b).) The Reporting Act prohibits interference with the right to disclose such activities, and retaliation against those who exercise that right. (Gov. Code, §§ 8547.3, 8547.8 et seq.)

The Reporting Act is administered by the State Auditor, who heads the Bureau. (Gov. Code, §§ 8543.2, subd. (a), 8547.4.) "In order to be free of organizational impairments to independence, the [B]ureau [is] independent of the executive branch and legislative control." (Gov. Code, § 8543.) "Upon receiving specific information that any employee or state agency has engaged in an improper governmental activity, the State Auditor may conduct an investigative audit of the matter." (Gov. Code, § 8547.5.) The whistleblower's identity cannot be disclosed without his or her permission except to a law enforcement agency conducting a criminal investigation. (*Ibid.*) The State Auditor may request assistance with an investigative audit from any state department, agency or employee. (Gov. Code, § 8547.6.) Information disclosed or produced by such a request cannot be divulged without the State Auditor's approval. (*Ibid.*)

Government Code section 8547.7 provides:

"(a) If the State Auditor determines that there is reasonable cause to believe that an employee or state agency has engaged in any improper governmental activity, he or she shall report the nature and details of the activity to the head of the employing agency, or the appropriate appointing authority. If appropriate, the State Auditor shall report this information to the Attorney General, the policy committees of the Senate and Assembly having jurisdiction over the subject involved, and to any other authority that the State Auditor determines appropriate.

"(b) The State Auditor shall not have any enforcement power. In any case in which the State Auditor submits a report of alleged improper activity to the head of the employing agency or appropriate appointing authority, that individual shall report to the State Auditor with respect to any action taken by the individual regarding the activity, the first report being transmitted no later than 30 days after the date of the State Auditor's report and monthly thereafter until final action has been taken.

"(c) Every investigative audit shall be kept confidential, except that the State Auditor may issue any report of an investigation that has been substantiated, keeping confidential the identity of the individual or individuals

involved, or release any findings resulting from an investigation conducted pursuant to this article that is deemed necessary to serve the interests of the state.

"(d) This section shall not limit any authority conferred upon the Attorney General or any other department or agency of government to investigate any matter."

B. *Appellant's Case*

In *Braun* v. *Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036 [61 Cal.Rptr.2d 58], we addressed appellant's claims in this case based on newspaper articles about investigations of the CPRT and the underlying allegations. As we noted in that opinion, appellant was the medical director of the CPRT, an activity within the UCSF School of Medicine which supported emergency medical services in the community. The State Auditor began an investigative audit of the CPRT in early 1994, after allegations about the CPRT were lodged with the Bureau pursuant to the Reporting Act. In August 1994, a search warrant was obtained based on the affidavit of respondent Tanner for the seizure of CPRT computers and time records. That month, the execution of this warrant and the State Auditor's investigation of the CPRT were reported in the newspaper. The CPRT was closed and appellant lost her employment there when the State Auditor's investigative report on the CPRT was made public in November of 1994.

The report found that appellant, who was identified in the report as "a" or "the" "CPRT administrator" rather than by name, had "grossly mismanaged" the CPRT. The report accused appellant of numerous improprieties, finding among other things that she had conflicts of interest relating to contracts between UCSF and the San Francisco Fire Department, where she was also employed; and had conspired to submit falsified payroll records; participated in the use of a "secret, unauthorized" bank account; falsified deposit records for student tuition fees; directed improper fundraising; used CPRT funds for her personal benefit and that of her family; used CPRT staff to handle her personal travel, bookkeeping, housekeeping, and child care arrangements; and misled the CPRT advisory board of directors about a 1992 audit.

The 73-page report included a 2-page summary of the "University Response" to the charges. This portion of the report noted that UCSF disagreed with a number of the State Auditor's findings, including the finding that appellant had a conflict of interest from her dual employment with UCSF and the San Francisco Fire Department, and the finding that there had been improper expenditures from the CPRT's bank account and petty cash fund.

The report stated that the State Auditor had reviewed the list of errors and omissions UCSF identified in the report and disagreed with UCSF's objections.

The report was addressed to the Governor, the President pro Tempore of the Senate, and the Speaker of the Assembly, and copies of it were furnished to various other officers and offices of the state government as well as the "Capitol Press Corps." The day after the report was released, the San Francisco Chronicle newspaper published a front-page article about it under the headline, "State Auditors Blast Director of UCSF Center."

Appellant's third amended complaint included detailed allegations contesting the charges in the report. Appellant alleged among other things that the report included "criminal" conflict of interest charges which the Bureau knew were false. Appellant alleged that she had no role in developing the improper payroll practices identified in the report, that these practices were widespread at UCSF, and that she was simply being made the "scapegoat" for them. She alleged that statements were included in the "vitriolic" report "merely to be inflammatory," and that the report's accusation of her gross mismanagement was based on "purposefully false and misleading" conclusions. She alleged that the Bureau contacted "officials at UCSF, the Registry of Charitable Trusts, the State Department of Justice, the IRS, the Franchise Tax Board, the SF District Attorney's office . . . and the San Francisco Fire Department," but that none of these entities concurred with or acted on any of the Bureau's findings against her.

The complaint set forth tort causes of action against respondents for defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. The defamation cause of action identified various false statements in the State Auditor's report, and alleged that the statements were made with knowledge of their falsity and with implied malice. The causes of action for negligence, and negligent and intentional infliction of emotional distress alleged in general terms that respondents should have known that their statements about appellant were false, and that their conduct was extreme and outrageous and intended to humiliate her. Appellant sought compensatory and punitive damages for defamation based on injury to reputation, loss of employment, and anguish and humiliation.

The complaint also included a cause of action against respondents for "violation of due process rights." This cause of action alleged that appellant was not informed of the charges against her during the CPRT audit; appellant was refused access to the evidence against her in the audit; respondents

ignored evidence submitted on her behalf during the audit; and respondents sought statements under penalty of perjury from her and others during the audit without affording them the assistance of counsel. This cause of action also alleged that (1) respondents unlawfully disclosed confidential information regarding the audit to members of the public in June of 1994; (2) respondents acted in excess of their jurisdiction in accusing her of having a conflict of interest; and (3) respondent Tanner made anti-Semitic remarks to intimidate and castigate her during the audit. The latter allegations were that when Tanner learned that appellant's family were Holocaust survivors, he told her that his family had been SS officers in Germany, and likened her alleged misdeeds at the CPRT to "Hitler" and the "Holocaust."[1]

Respondents demurred on the ground that the complaint failed to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) They demurred to all causes of action, other than the one for "violation of due process," on the ground that the State Auditor's report was privileged under Civil Code section 47, subdivisions (a) (publication in the discharge of official duty) and (b) (publication in official proceeding authorized by law). Multiple additional grounds for the demurrer were advanced as to all causes of action.

The trial court concluded that all proceedings and reports of the State Auditor were absolutely privileged under the Reporting Act and Civil Code section 47, subdivisions (a) and (b), and sustained the demurrer without leave to amend.

## II. DISCUSSION

### A. Defamation and Other Tort Claims

In *Braun* v. *Chronicle Publishing Co.*, *supra*, 52 Cal.App.4th at pages 1043, 1048, we concluded that an investigative audit by the State Auditor under the Reporting Act was an "official proceeding authorized by law" within the meaning of the anti-SLAPP (strategic lawsuits against public participation) statute (Code Civ. Proc., § 425.16, subd. (e)). We likewise conclude here that such an audit constitutes an "official proceeding authorized by law" under Civil Code section 47, subdivision (b), which provides that "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, [or] (3) in any other official proceeding authorized by law . . . ." Therefore, all statements made

---

[1]Appellant asks us to take judicial notice of evidence developed in her case against other defendants. Respondents dispute the facts for which this evidence is offered, and all of the matters appear reasonably subject to dispute. Therefore, the request for judicial notice is denied. (Evid. Code, § 452, subd. (h).) The evidence does not add anything material to the complaint for purposes of the ruling on the demurrer in any event.

in furtherance of a Reporting Act audit, such as those in the search warrant affidavit and the State Auditor's report in this case are protected by the absolute privilege under that statute.

The privilege issue in *Braun* v. *Chronicle Publishing Co.* was whether newspaper accounts of the CPRT audit were reports of a "public official proceeding" for purposes of Civil Code section 47, subdivision (d)(1) (fair and true report in public journal). We concluded that they were, and in so doing we rejected appellant's argument, advanced again here, that the term "official proceeding" in section 47, subdivision (b), does not "reach beyond proceedings which resemble judicial and legislative proceedings." (*Braun* v. *Chronicle Publishing Co.*, *supra*, 52 Cal.App.4th at p. 1051, disagreeing with *Fenelon* v. *Superior Court* (1990) 223 Cal.App.3d 1476 [273 Cal.Rptr. 367].) ▮ Where the same words are repeated in a statute there is a presumption that the same meaning is intended (*Castro* v. *Sacramento County Fire Protection Dist.* (1996) 47 Cal.App.4th 927, 932 [55 Cal.Rptr.2d 193]), and we find no reason to ascribe different meanings to the term "official proceeding" in Civil Code section 47, subdivisions (b) and (d). *Braun* v. *Chronicle Publishing Co.*, *supra*, 52 Cal.App.4th at page 1051, reflects our belief that the words at issue were used consistently, and thus that interpretation of one of these subdivisions properly informs interpretation of the other. Accordingly, our analysis in *Braun* v. *Chronicle Publishing Co.* is dispositive of the closely-related privilege issue presented here.

▮ Our holding that statements made in furtherance of Reporting Act audits are absolutely privileged under Civil Code section 47 is consistent with many other cases which have reached the same conclusion with respect to statements made in or about other types of governmental investigations. (See *Kemmerer* v. *County of Fresno* (1988) 200 Cal.App.3d 1426, 1441 [246 Cal.Rptr. 609] [civil service investigation]; *O'Shea* v. *General Telephone Co.* (1987) 193 Cal.App.3d 1040, 1047-1049 [238 Cal.Rptr. 715] [California Highway Patrol background employment investigation]; *Dong* v. *Board of Trustees* (1987) 191 Cal.App.3d 1572, 1594 [236 Cal.Rptr. 912] [National Institutes of Health investigation]; *Green* v. *Cortez* (1984) 151 Cal.App.3d 1068, 1073 [199 Cal.Rptr. 221] [internal police investigation]; *King* v. *Borges* (1972) 28 Cal.App.3d 27, 32 [104 Cal.Rptr. 414] [Real Estate Commissioner investigation]; *Crane* v. *The Arizona Republic* (9th Cir. 1992) 972 F.2d 1511, 1517-1519 [investigation by congressional committee and Department of Justice].) Among the decisions squarely on point is *Howard* v. *Oakland Tribune* (1988) 199 Cal.App.3d 1124, 1128 [245 Cal.Rptr. 449], where this court held that a Department of Education investigation into an alleged misuse of public funds was an "official proceeding" within the meaning of Civil Code section 47, subdivision (d).

Appellant argues that *Pettus* v. *Cole* (1996) 49 Cal.App.4th 402 [57 Cal.Rptr.2d 46], supports a contrary result, but that case is inapposite. *Pettus* held that a company's disability verification procedure was not a "judicial proceeding" under Civil Code section 47, subdivision (b), and thus that the report of a psychiatrist who evaluated an employee's request for disability leave was not privileged under this statute. (49 Cal.App.4th at p. 437.) Here, unlike *Pettus*, the term "judicial proceeding" is not at issue. *Pettus* is also distinguishable because "the only decision makers involved were a private employer . . . and its employees and agents." (*Ibid.*) There was no *governmental* investigation in *Pettus*.

Our conclusion that the State Auditor's report is within the "official proceeding" privilege is also consistent with many cases which have reasoned that "a communication to an official administrative agency, which communication is designed to prompt action by that agency, is as much a part of the 'official proceeding' as a communication made after the proceedings have commenced." (*King* v. *Borges, supra,* 28 Cal.App.3d at p. 34; see also *Dove Audio, Inc.* v. *Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 783 [54 Cal.Rptr.2d 830]; *Passman* v. *Torkan* (1995) 34 Cal.App.4th 607, 619 [40 Cal.Rptr.2d 291]; *Hunsucker* v. ·*Sunnyvale Hilton Inn* (1994) 23 Cal.App.4th 1498, 1503-1504 [28 Cal.Rptr.2d 722]; *Williams* v. *Taylor* (1982) 129 Cal.App.3d 745, 753 [181 Cal.Rptr. 423]; *Imig* v. *Ferrar* (1977) 70 Cal.App.3d 48, 55 [138 Cal.Rptr. 540]; *Martin* v. *Kearney* (1975) 51 Cal.App.3d 309, 311 [124 Cal.Rptr. 281].)

The Reporting Act provides for the furnishing of investigative audit reports to "official administrative agencies" to "prompt action by those agencies" within the meaning of these cases. The Reporting Act directs the State Auditor, if he or she has reasonable cause to believe that a state employee or agency has engaged in any improper governmental activity, to report the nature and details of the activity to the head of the employing agency, the appropriate appointing authority, or "any other authority that the State Auditor determines appropriate." (Gov. Code, § 8547.7, subd. (a).) The head of the employing agency or appropriate appointing authority must then report monthly to the State Auditor until "final action has been taken" on the report. (Gov. Code, § 8547.7, subd. (b).)

One policy underlying the absolute privilege for statements made in governmental investigations and reports of misconduct "is to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing." (*Imig* v. *Ferrar, supra,* 70 Cal.App.3d at p. 55; see also *O'Shea* v. *General Telephone Co., supra,* 193 Cal.App.3d at p. 1048.) This consideration is especially pertinent

here because the express purpose of the Reporting Act is to foster such communications. (Gov. Code, § 8547.1.) The Reporting Act seeks to encourage reports of improper governmental activities by keeping whistleblowers' identities confidential and protecting them from reprisals. (Gov. Code, §§ 8547.5, 8547.8 et seq.)

If respondents' statements in an investigative audit were not absolutely privileged, then whistleblowers' reports of improper activities would also lack that protection, and the resulting exposure would undermine the effectiveness of the Reporting Act. As other courts have stated, "there must be an open channel of communication by which citizens can call [the investigator's] attention to suspected wrongdoing. That channel would quickly close if its use subjected the user to a risk of liability for libel. A qualified privilege is inadequate protection under the circumstances. [¶] . . . [¶] The importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity outweighs the occasional harm that might befall a defamed individual. Thus the absolute privilege is essential." (*King* v. *Borges, supra,* 28 Cal.App.3d at p. 34; see also *Williams* v. *Taylor, supra,* 129 Cal.App.3d at pp. 753-754; *Imig* v. *Ferrar, supra,* 70 Cal.App.3d at pp. 55-56.)

Appellant contends that, even if Reporting Act audits are "official proceedings" under Civil Code section 47, subdivision (b), the investigative audit and report in this case were not "authorized by law" as required by that statute. Her arguments in this regard are that respondents acted in excess of their jurisdiction in various respects. We will assume without deciding that acts in excess of jurisdiction are outside the privilege for "authorized" official proceedings. There were no such acts here in any event.

Appellant contends that the CPRT audit was unauthorized because the Reporting Act is unconstitutional insofar as it provides for audits of the University of California.[2] This argument is based on the university's status as "a constitutionally autonomous entity generally exempt from state regulation." (*Regents of University of California* v. *Aubry* (1996) 42 Cal.App.4th 579, 582 [49 Cal.Rptr.2d 703].) However, the university is subject among other things "to the specific provisions set forth in article IX, section 9." (*San Francisco Labor Council* v. *Regents of University of California* (1980) 26 Cal.3d 785, 789 [163 Cal.Rptr. 460, 608 P.2d 277].) California Constitution, article IX, section 9, subdivision (a) permits "such legislative control

---

[2]The university itself evidently does not take this position. The request for the search warrant in this case included a letter from the university's deputy general counsel to respondent Campbell stating that "the University has cooperated with the State Auditor and intends to continue to do so."

as may be necessary to insure the security of [the University's] funds." We conclude that this provision authorizes Reporting Act investigations of improper governmental activities at the university.

Appellant argues that the Reporting Act does not permit release of investigative audits to the public, or, alternatively, that it does not permit audits of the university to be made public. However, the Reporting Act provides that the term " 'State agency' includes the University of California for purposes of Sections 8547.5 to 8547.7, inclusive." (Gov. Code, § 8547.2.) Government Code section 8547.5 provides for the conduct of investigative audits, and Government Code section 8547.7, subdivisions (a) and (c) provide for the furnishing of audit reports to appropriate agencies, as well as the "issu[ance]" of reports that have been "substantiated," and the release of investigative "findings" if "deemed necessary to serve the interests of the state." Thus, the Reporting Act does not distinguish university audits from other audits for purposes of their issuance and release. The only question is whether the State Auditor's discretion to "issue" reports and "release" findings under Government Code section 8547.7, subdivision (c), extends to making them public.

Although the statute does not expressly refer to the release of investigative audit reports and findings "to the public" (cf. Gov. Code, § 8546.1 [reports of agency financial and performance audits "shall be made available to the public"]), the State Auditor submits that this is the statute's intent. Consistent with that construction, the report in this case was released to the press, and it includes a note on the cost of copies and how they may be ordered.

■ "An administrative application of the language of an act is entitled to respect by the courts, and unless clearly erroneous is a significant factor to be considered in ascertaining the meaning of a statute." (*Mudd* v. *McColgan* (1947) 30 Cal.2d 463, 470 [183 P.2d 10]; see also *Nipper* v. *California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 45 [136 Cal.Rptr. 854, 560 P.2d 743]; *Santillano* v. *State Personnel Bd.* (1981) 117 Cal.App.3d 620, 625 [173 Cal.Rptr. 1].) ■ The State Auditor's interpretation of Government Code section 8547.7 does not appear "clearly erroneous"; it is, to the contrary, supported by the language of the statute.

Government Code section 8547.7, subdivisions (a) and (b) provide for reports to agencies with the power to act on the State Auditor's findings, and for follow-up reports by those agencies. Since those subdivisions cover the subject of enforcement in light of the State Auditor's findings, subdivision (c) must serve some other purpose. This inference is strengthened by subdivision (c)'s stipulation that the identity of the individuals involved in the

reports thereunder are to be kept confidential. No such confidentiality could be maintained in reports for possible enforcement action because the responsible agency would need to know the identities of the individuals involved. It thus appears that subdivision (c) has a purpose distinct from those of subdivisions (a) and (b), and we must construe the provision so as to effectuate that separate purpose (*Garcia* v. *McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906]).

The purpose of Government Code section 8547.7 subdivision (c) is evident from the structure of the statute. If, as has been stated, subdivision (c) reports and findings are not aimed at remedial action, then their purpose must be merely informational, and if, as has been indicated, government agencies are informed pursuant to subdivisions (a) and (b), then it must be the public who is being informed under subdivision (c). No audiences for audit reports are apparent other than the agencies which are empowered to act on them and the citizens who have paid for them. Accordingly, we concur in the State Auditor's reading of Government Code section 8547.7, subdivision (c), and hold that it provides for the release of reports and findings to the public.

Appellant thinks it "absurd to imagine," in light of what she calls "the extremely limited scope of disclosure permitted under [Government Code section 8547.7] as a whole," that ". . . the Legislature intended to authorize the State Auditor to release any or all of this same confidential investigative audit material to anyone and everyone in the whole wide world." █ Statutes should be interpreted, of course, to avoid absurd and inconsistent results. (*Fremont Union High Sch. Dist.* v. *Santa Clara County Bd. of Education* (1991) 235 Cal.App.3d 1182, 1186 [286 Cal.Rptr. 915].) █ However, public disclosure of reports under Government Code section 8547.7, subdivision (c) does not conflict with the balance of the Reporting Act. Such disclosure may further the law's purposes by serving as a deterrent to misconduct and adding to the pressure for remedial action. (See generally, Gellhorn, *Adverse Publicity by Administrative Agencies* (1973) 86 Harv. L.Rev. 1380, 1382-1383.) Thus, our interpretation of the statute is consistent with its aims as well as its language. The State Auditor did not act in excess of jurisdiction in making the CPRT audit report public.

Appellant contends that the State Auditor exceeded his authority in charging her with a conflict of interest. She notes that, shortly after the CPRT audit was completed, the Fair Political Practices Commission cleared her of any conflict of interest under Government Code section 82030, and she argues that this commission has exclusive jurisdiction over alleged conflicts of interest. However, the audit report alleged that the CPRT administrator

had a conflict of interest under Government Code section 1090 (employees' financial interest in contracts made in their official capacity), not a conflict of interest under the Political Reform Act of 1974 (Gov. Code, § 87100 et seq.). The violation of *any* conflict of interest statute is in any event within the broad definition of "improper governmental activities" which may be investigated by the State Auditor under the Reporting Act. (Gov. Code, §§ 8547.3, subd. (b), 8547.5.)

Appellant submits that the Bureau and the State Auditor function under the Reporting Act like a permanent grand jury over state agencies, and she reasons that, because the Legislature has not made grand jury reports fully privileged (Pen. Code, § 930 [no privilege for comments about unindicted individuals]), it could not have intended for Reporting Act reports to be privileged either. However, the Legislature has not enacted any law like Penal Code section 930 for Reporting Act reports, or otherwise excepted them from the privilege of Civil Code section 47, subdivision (b)(3) (cf. *Begier* v. *Strom* (1996) 46 Cal.App.4th 877, 885 [54 Cal.Rptr.2d 158] [exception for knowingly false reports of child abuse]). Consequently, we have no basis to infer that any such exception is intended.

Because the absolute privilege of Civil Code section 47, subdivision (b)(3) covers all of appellant's tort claims (*Rubin* v. *Green* (1993) 4 Cal.4th 1187, 1194 [17 Cal.Rptr.2d 828, 847 P.2d 1044]), the demurrer to those causes of action was correctly sustained without leave to amend.[3]

B. *"Due Process" Claims**

. . . . . . . . . . . . . . . . . . . . . . . .

### III. CONCLUSION

The judgment of dismissal is affirmed with costs to respondents.

Poché, J., and Reardon, J., concurred.

*Appellant's petition for review by the Supreme Court was denied March 9, 1999.*

---

[3]In view of this conclusion, we need not address whether any of the tort claims is barred by any other privilege or immunity.

*See footnote, *ante*, page 1382.