[No. B116352. Second Dist., Div. Four. Mar. 1, 1999.]

BETHANY BARDIN, Plaintiff and Appellant, v.
LOCKHEED AERONAUTICAL SYSTEMS COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Law Offices of Jeffrey C. McIntyre and Jeffrey C. McIntyre for Plaintiff and Appellant.

Ballard, Rosenberg & Golper, Richard S. Rosenberg, John J. Manier and Kathleen E. Collins for Defendants and Respondents.

**OPINION**

**EPSTEIN, J.**—Bethany Bardin applied for a job with the Los Angeles Police Department (the Department). The Department received information from Ms. Bardin's former employer as part of its background investigation. Ms. Bardin sued her former employer, alleging that false and misleading negative information was provided to the Department, causing her application for employment to be rejected. The primary issue on appeal is the extent of the applicable privilege. If respondents have an absolute privilege, we must affirm the trial court's award of summary judgment on the tort causes of action. If they have only a conditional privilege under Government Code section 1031.1, subdivision (b),[1] which does not apply to information provided with fraud or malice, we must reverse the judgment.

This issue requires resolution of an ambiguity in section 1031.1, subdivision (b), which governs employer responses to background investigations conducted by law enforcement agencies. Section 1031.1, subdivision (b)

---

[1]We refer to Government Code section 1031.1 as "section 1031.1."

provides: "In the absence of fraud or malice, no employer shall be subject to any civil liability for any relevant cause of action by virtue of releasing employment information required pursuant to this section. Nothing in this section is intended to, nor does in any way or manner, abrogate or lessen the existing common law or statutory privileges or immunities of an employer."

We conclude that the statute must be read to provide a qualified immunity, but to allow a defendant to assert any other common law or statutory privilege available. Case law provides that an employer who provides information to a law enforcement agency has an absolute privilege under Civil Code section 47, subdivision (b). On that basis, we affirm the trial court's grant of summary judgment on the tort causes of action. We affirm the judgment on the contract causes of action based on the release signed by appellant.

## FACTUAL AND PROCEDURAL HISTORY

Appellant was employed by Lockheed Martin Corporation (Lockheed) from 1987 until she was laid off in 1993. She applied to the Department to become a police officer in November 1995. Appellant signed a "Release and Waiver" form provided by the Department, authorizing it to conduct a thorough background investigation. The form released any former employer from "any or all liability for damage of whatever kind, which may at any time result to [appellant], . . . because of compliance with this authorization and request to release information, . . . ." Appellant's signature on the release and waiver form was not notarized.

The Department conducted a background investigation on appellant. In March 1996, appellant received a letter from the Department entitled "PO-LICE OFFICER BACKGROUND PROBLEM." The letter detailed a number of problems with appellant's application. It stated that appellant "failed to disclose that you had employment problems and a complaint related to your drinking while at Lockheed." Appellant was informed that her application had been suspended until she provided a written explanation of the problems revealed by the background investigation.

In August 1996, appellant sued Lockheed for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, defamation, violation of Labor Code sections 1050, 1053 and 1054, and intentional interference with prospective economic advantage. Vale Hanzel, a Lockheed employee, was named as a defendant in all but the first two causes of action. Appellant alleged that Lockheed made false statements about her employment, and interfered with her application to the

Department "through the dissemination of false information without a good faith belief in the truth of the information given to prospective employers, without just cause and, in addition, as a means of retaliating against and harassing Plaintiff for resisting or complaining about wrongful conduct in regard to her employment . . . ."

Respondents answered the complaint and moved for summary judgment. That motion was denied by the trial court. Respondents renewed the motion in July 1997. They argued that their response to the Department's request was absolutely privileged under Civil Code section 47, subdivision (b)(3). That statute provides in pertinent part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) . . . (3) in any other official proceeding authorized by law . . . ." Respondents also relied upon *O'Shea* v. *General Telephone Co.* (1987) 193 Cal.App.3d 1040 [238 Cal.Rptr. 715] (*O'Shea*), which held that information given by a former employer in response to a background investigation by a police agency is absolutely privileged. We discuss *O'Shea* in detail below.

Appellant opposed the motion for summary judgment on the ground that section 1031.1 overturned *O'Shea* and substituted a conditional privilege which does not apply if the former employer acts with malice or fraud.

The trial court granted summary judgment, holding that Civil Code section 47, subdivision (b) provides absolute immunity, and that *O'Shea* is directly on point. It held that section 1031.1 did not change that rule. Judgment was entered in favor of respondents. Appellant filed a timely appeal.

### DISCUSSION

■ " 'Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding. . . .' (§ 437c, subd. (a).) 'The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence . . . and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted . . . on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.' [Citations.] [¶] A defendant meets his or her burden on a motion for summary judgment if that party has proved there is a complete defense to the

cause of action. (§ 437c, subd. (o)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists. [Citations.] [¶] ■ On appeal, we independently assess the correctness of the trial court's ruling, applying the same legal standard as the trial court. [Citations.] ' "[W]e construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it." . . . .' " (*Van Dyke* v. *Dunker & Aced* (1996) 46 Cal.App.4th 446, 450-451 [53 Cal.Rptr.2d 862].)

This case requires us to harmonize two provisions of section 1031.1, subdivision (b). Before we turn to the language of that statute, however, it is necessary to examine the common law as it existed when the language at issue was added to section 1031.1 in 1993.

As the trial court observed, *O'Shea*, *supra*, 193 Cal.App.3d 1040, is directly on point. In that case, O'Shea, an applicant for a position with the California Highway Patrol, sued his former employer, General Telephone, for providing negative information in response to a request for information from the Highway Patrol, He alleged that the information was false, and that General Telephone had acted with malice. Based on information received from General Telephone, the Highway Patrol was concerned about his ability to deal with the public. It decided not to hire O'Shea. The trial court granted summary judgment to the defendant on the basis of absolute privilege.

The *O'Shea* court held that statements by a former employer obtained during a background investigation by a law enforcement agency are absolutely privileged under Civil Code section 47, former subdivision (2), the predecessor to the current Civil Code section 47, subdivision (b). (193 Cal.App.3d at p. 1048.) The court observed that the established rule in California was to accord even unsolicited communications to governmental agencies the absolute privilege of Civil Code section 47, former subdivision (2). (193 Cal.App.3d at p. 1048.) "The rationale of those cases is obvious in the case before us; it is to encourage the utmost freedom of communication between citizens and public authorities. The Legislature has wisely required a thorough background investigation of the character of those who wish to be peace officers. It is essential that former employers of those considered for peace officer positions feel free to discuss in detail the characteristics of their former employees, now being considered for the extremely demanding tasks undertaken by the peace officers of this state." (*Ibid.*)

In 1993, section 1031.1 was added to the Government Code. (Stats. 1993, ch. 135 (Sen. Bill No. 1097), § 3.) The statute included legislative findings:

"(a) The position of peace officer in the State of California requires a high level of responsibility and integrity. [¶] (b) The Commission on Peace Officer Standards and Training has validated, by statewide job analysis, 15 job dimensions that represent the major and critical areas of performance in entry level law enforcement. These dimensions include, among others, integrity, dependability, judgment under pressure, problem-solving ability, and observation skills. [¶] (c) Existing statutory law and regulations of the commission require that an extensive background investigation be conducted prior to the appointment of a peace officer in order to ensure good moral character and the selection of qualified candidates. [¶] (d) Law enforcement agencies have increasingly experienced refusals from employers to divulge information pertinent to peace officer applicants even with signed release waivers from applicants themselves, and this situation has seriously affected law enforcement's ability to conduct a thorough background investigation." (Stats. 1993, ch. 135, § 1.)

The Legislature declared its intent in enacting section 1031.1: "[T]hat law enforcement have access to pertinent information about peace officer applicants in order to ensure that qualified individuals with good moral character are selected." (Stats. 1993, ch. 135, § 2.)

Subdivision (a) of section 1031.1 states that an employer must provide information in response to a request by a law enforcement agency if: (1) the request is in writing; (2) there is a notarized authorization by the applicant releasing the employer from liability; and (3) the request and authorization are presented by an authorized representative of the agency.

As amended on April 12, 1993, Senate Bill No. 1097, the bill by which the statute was enacted, provided an absolute privilege to the employer: "(b) Any employer who discloses information in accordance with this section shall be exempt from civil liability." (Sen. Bill No. 1097 (1993-1994 Reg. Sess.) § 3.) A subsequent amendment to this subdivision created the statutory construction problem at issue in this case. The original language of subdivision (b) was deleted, and the following language was substituted in its place: "(b) In the absence of fraud or malice, no employer shall be subject to any civil liability for any relevant cause of action by virtue of releasing employment information required pursuant to this section. Nothing in this section is intended to, nor does in any way or manner, abrogate or lessen the existing common law or statutory privileges and immunities of an employer." (Sen. Amend. to Sen. Bill No. 1097 (1993-1994 Reg. Sess.) § 3, Apr. 28, 1993.) This is the version of subdivision (b) which was enacted.

The first sentence of section 1031.1, subdivision (b) confers a qualified privilege, while the second sentence, if interpreted to preserve the

common law rule as declared in *O'Shea*, confers an absolute privilege. The trial court found no ambiguity in the statute. We disagree.

█ "The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.] Ordinarily, the words of the statute provide the most reliable indication of legislative intent. (*Ibid.*) When the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. [Citations.] ' "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." ' [Citation.]" (*Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].)

█ A similar statutory construction issue was addressed by the court in *Fremont Comp. Ins. Co. v. Superior Court* (1996) 44 Cal.App.4th 867 [52 Cal.Rptr.2d 211]. The question was whether workers' compensation insurers who reported a physician for overbilling were entitled to a qualified privilege under Insurance Code section 1877.5 (§ 1877.5), or an absolute privilege under Civil Code section 47. Section 1877.5 exempts insurers from "any civil liability in a cause or action of any kind where the insurer . . . acts in good faith, without malice, and reasonably believes that the action taken was warranted by the then known facts, obtained by reasonable efforts." The trial court overruled the defendant insurers' demurrer on the ground of privilege, reasoning that the specific section 1877.5 qualified privilege controls the general absolute privilege accorded by Civil Code section 47.

The Court of Appeal explained the reasoning of the trial court and of the plaintiff on appeal: "The idea is that by providing for immunity when fraud reporting is done in good faith, the statute necessarily implies that reporting (as alleged here) in bad faith enjoys no immunity. (*Expressio unius* and all that.) Accordingly, even if Civil Code section 47 did provide immunity for 'bad faith' fraud reporting, it would be overridden by Insurance Code section 1877.5." (*Fremont Comp. Ins. Co. v. Superior Court, supra,* 44 Cal.App.4th at p. 873.) A similar "specific over general" argument is made by appellant in the case before us.

The *Fremont* court rejected this approach. It held the rule that the specific controls the general applies only when the provisions cannot be reconciled. (44 Cal.App.4th at p. 873.) It reconciled Insurance Code section 1877.5 with Civil Code section 47 through a close examination of the language of section 1877.5, which is very similar to the language of section 1031.1. As in

section 1031.1, subdivision (b), the first sentence of section 1877.5 sets forth a qualified privilege. Like section 1031.1, the qualified privilege is followed by a savings clause: "Nothing in this chapter is intended to, nor does in any way or manner, abrogate or lessen the existing common law or statutory privileges or immunities of an insurer, agent authorized by that insurer to act on its behalf, or any authorized governmental agency or its employees."

The court in *Fremont* reasoned: "Plainly, if an insurer enjoyed a privilege to report workers' compensation insurance fraud (even in bad faith) prior to the enactment of Insurance Code section 1877.5, the language of the second sentence of section 1877.5 means that the insurer still had that privilege afterwards. By providing that section 1877.5 would not abrogate any existing statutory immunities, the statute becomes easily reconcilable with Civil Code section 47—assuming, of course, that section 47 afforded such immunities in the first place." (44 Cal.App.4th at p. 873, italics omitted.)

The *Fremont* court recognized the difficulty raised by the two clauses of section 1877.5: "One might wonder, of course, why the Legislature should indulge in such redundancy. Why specifically establish an immunity for good faith fraud reporting yet retain existing immunity for bad faith reporting? [¶] The answer is found in the nature of legislative compromise. . . . Here, the second sentence of section 1877.5 appears to be the product of a legislative compromise to enact a qualified reporting privilege and leave to the courts the question of what reporting immunities might already exist." (44 Cal.App.4th at pp. 873-874.)

There is one distinction between the context in which *Fremont* arose and this case. In *Fremont*, there was no preexisting common law applying the absolute privilege of Civil Code section 47, subdivision (b) to insurers reporting workers' compensation fraud. As we have seen, the *O'Shea* case already had established that the absolute privilege applies to employers who provide information to a law enforcement agency conducting an investigation of an applicant when section 1031.1 was enacted.

In *Fremont*, the plaintiffs made another argument similar to one made here by appellant. They argued that the second sentence of section 1877.5 referred to something other than reporting, though they did not say what. (44 Cal.App.4th at p. 874.) The Court of Appeal rejected this argument and observed that insurers have a statutory duty to report fraud, and that the second sentence can only be understood to apply to that context. (*Ibid.*)

Here, appellant argues: "[T]he only reasonable interpretation of the second sentence of subpart (b) is that the Legislature did not intend to change

the existing privileges of employers other than with respect to their providing information about such applicants." We cannot adopt the interpretation of section 1031.1 suggested by appellant. To do so would ignore the context in which the statute was enacted. The sole purpose of section 1031.1 is to ensure that law enforcement agencies are able to obtain necessary background information regarding applicants from employers by providing the employers a privilege. Like the court in *Fremont*, we must interpret the statute at issue in the context in which it was adopted.

The *Fremont* court went on to hold that Civil Code section 47 confers an absolute privilege on insurers who report insurance fraud to either the local district attorney or the Department of Insurance, citing *O'Shea*. (44 Cal.App.4th at p. 875.) We agree with the reasoning in *Fremont* and find it equally applicable to the two sentences of section 1031.1, subdivision (b). The savings clause in the second sentence of section 1031.1, subdivision (b) preserves the existing common law and statutory privileges. These are subject to change, through judicial decision or legislative action. In the event an absolute privilege becomes unavailable in the future, either by a change in the common law or by amendment to Civil Code section 47, subdivision (b), the qualified privilege of section 1031.1 would still apply. Since we interpret section 1031.1, subdivision (b) to preserve common law and statutory privileges, respondents had an absolute privilege under *O'Shea*.[2]

■ Appellant argues the trial court erred in extending the Civil Code section 47 privilege to her contract causes of action. We agree. "The litigation privilege was never meant to spin out from judicial action a party's performance and course of conduct under a contract." (*Stacy & Witbeck, Inc.* v. *City and County of San Francisco* (1996) 47 Cal.App.4th 1, 8 [54 Cal.Rptr.2d 530].) Appellant brought causes of action for both breach of contract and breach of the implied covenant of good faith and fair dealing. A cause of action for breach of the implied covenant sounds only in contract, not in tort. (See *Lazar* v. *Superior Court* (1996) 12 Cal.4th 631, 643-644 [49 Cal.Rptr.2d 377, 909 P.2d 981]; *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373].) The trial court erred in granting summary judgment on these causes of action based on the Civil Code section 47 privilege.

■ But appellant signed a release provided by the Department that expressly released her former employers from any liability for providing

_____

[2]We note that appellant's signature on the authorization was not notarized, as is required by section 1031.1, subdivision (a). It may well be that an employer who provides information despite this omission is unable to rely upon the qualified privilege set out in section 1031.1, subdivision (b). But it is unnecessary to resolve that issue since the absolute privilege under Civil Code section 47 controls.

information in response to the Department's investigation. The release provides: "I hereby release you, as my . . . former employer . . . , *from any and all liability for damage of whatever kind,* which may at any time result to me . . . because of compliance with this authorization and request to release information, . . ." (Italics added.)

At oral argument, counsel for appellant argued that the release contained an exception for information provided with fraud or malice. It does not. The reverse side of the release, which is not incorporated into the release itself, and which is not signed by appellant, contains a summary of the decision in *O'Shea, supra,* 193 Cal.App.3d 1040 and a summary of section 1031.1. The paragraph on section 1031.1 states that the statutory privilege is qualified, and applies only in the absence of fraud or malice. But the contractual release form contains no such limitation.

■ "In general, a written release extinguishes any obligation covered by the release's terms, provided it has not been obtained by fraud, deception, misrepresentation, duress, or undue influence. [Citations.] [¶] ' "The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding; but it is also a general rule that the assent of a party to a contract is necessary in order that it be binding upon him, and that, if the circumstances of a transaction are such that he is not estopped from setting up his want of assent, he can be relieved from the effect of his signature if it can be made to appear that he did not in reality assent to it." [Citation.]' " (*Skrbina* v. *Fleming Companies* (1996) 45 Cal.App.4th 1353, 1366-1367 [53 Cal.Rptr.2d 481].)

■ Appellant argues that the release does not expressly release respondents from disseminating false or baseless statements. We do not find that limitation in the language of the release. It broadly and unambiguously releases a former employer *"from any and all liability for damage of whatever kind . . . ."*

Appellant also argues that she did not intend to release defendants from liability for providing false or unsubstantiated information or malicious or fraudulent conduct, nor did she understand that the release did so. She supports this argument with her declaration submitted in opposition to the motion for summary judgment: "At the time I applied to the LAPD I was required to sign a document entitled 'Release and Waiver,' . . . I never had any discussion with the LAPD regarding the meaning of such document before I signed it. In executing the Release and Waiver, I never intended to

release any person from liability for disseminating any false or unsubstantiated information about me,' and I did not understand that the Release and Waiver did so. Further, I do not believe that a person or entity can be in 'compliance' with the Release if the party provides false or unsubstantiated information."

She also provided the declaration of her attorney, Jeffrey C. McIntyre. Mr. McIntyre declared that respondent Hanzel of Lockheed testified at deposition that: "(a) Mr. Hanzel read the Release and Waiver prior to providing any information about plaintiff to Roger Dunn, the LAPD investigator. [¶] (b) The Release and Waiver did not lead Mr. Hanzel to believe that he could make any false statements or provide any false opinions about plaintiff to the LAPD." The opposition did not include transcripts of Mr. Hanzel's deposition testimony.

In reply, respondents objected to the declaration by Mr. McIntyre regarding Mr. Hanzel's deposition testimony. Respondents also submitted appellant's deposition testimony, in which she stated that she read the release and waiver before signing it and understood it to mean that the Department would conduct a thorough background investigation of her. Appellant was asked: "And you were releasing those employers from any liability from what they did in connection with giving information to LAPD, correct?" Appellant responded: "To an extent, yes." Counsel for respondents asked: "What was the extent that you understood after you read it?" Appellant answered: "That my former employers would give any information they had based on my employment and their company or . . . information they had about me while I was employed." Counsel asked: "And that they would be released in doing that, correct?" Appellant answered "Correct."

In *Skrbina* v. *Fleming Companies, supra,* 45 Cal.App.4th 1353, the plaintiff was laid off as a part of his employer's reduction in force. In order to obtain severance benefits, he signed a release which provided: "In consideration of the additional health and welfare benefits and severance benefits and other consideration provided me by [my employer] . . . I hereby completely release and forever. discharge [my employer and all affiliated companies, officers, directors and employees] from *any claims, rights, demands, actions, obligations, character [sic], known or unknown, which I may now have, have ever had, or may in the future have* [exclusive of workers' compensation benefits] *regarding my employment, benefits, and separation from Fleming including any and all claims under state or federal employment laws and regulations.'* " (*Id.* at pp. 1359-1360, italics in original and added.)

Subsequently, Mr. Skrbina filed an action against Fleming Companies for unlawful discrimination based on state and federal employment laws and for

wrongful discharge in violation of public policy. The trial court granted summary judgment to defendants based on the release signed by Mr. Skrbina. On appeal, Mr. Skrbina asserted that he did not intend to abandon his discrimination and harassment claims and that he was not told that signing the release might affect those claims. He said he was told only that his signature was required in order to collect severance benefits. (45 Cal.App.4th at p. 1367.)

The *Skrbina* court rejected this argument. It observed that Mr. Skrbina admitted that he read the release and signed it willingly. He offered no evidence that the defendants told him the release would not cover employment discrimination claims. There was no evidence that he sought anyone's advice as to the scope of the release. The court concluded: "If he signed the release on the mere unspoken belief that the release did not encompass such claims, despite express language in the release to the contrary, he may not now rely on his unspoken intention not to waive these claims in order to escape the effect of the release." (45 Cal.App.4th at p. 1367.)

We agree with the *Skrbina* court's analysis. Appellant has provided no evidence to raise a triable issue of material fact regarding the scope of the release. Her remaining causes of action are barred by the release.

DISPOSITION

The judgment is affirmed.

Vogel (C. S.), P. J., and Curry, J., concurred.

A petition for a rehearing was denied March 24, 1999.